Barstow Rodeo and Riding Club, Inc. v. Commissioner.
Barstow Rodeo & Riding Club, Inc. v. Commissioner
Docket No. 36395.
United States Tax Court
1953 Tax Ct. Memo LEXIS 46; 12 T.C.M. (CCH) 1351; T.C.M. (RIA) 53375; November 30, 1953
*46 Petitioner is a social club whose members are interested in horseback riding and related sports. Each year the club sponsors a rodeo for the benefit of the entire community. In order to meet the expenses of the rodeo, the club charges admission to the rodeo and dances and sells beer, soft drinks, and advertising space. The rodeo results in no net profit to the club. Held, the petitioner is an exempt corporation under Sec. 101 (9), I.R.C.
Waldo Willhoft, Esq., 415 Anderson Building, San Bernardino, Calif., for the petitioner. Donald P. Chehock, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined deficiencies in declared value excess profits tax, income tax, and penalties of the petitioner, as follows: Year
Tax
Deficiency
Penalty
9/27/45 to
Declared Value
12/31/45
Excess Profits
$ 62.71
$ 15.68
9/27/45 to
12/31/45
Income
103.08
25.77
1946
Income
329.57
82.39
1947
Income
765.13
191.28
1948
Income
369.81
92.45
1949
Income
90.89
22.72
Total
$1,721.19
$430.29 The only issue presented for decision is whether petitioner is an *47 exempt corporation under section 101 (9) of the Internal Revenue Code. Findings of Fact Petitioner, Barstow Rodeo and Riding Club, Inc., was incorporated under the laws of the State of California on November 15, 1945. Pertinent provisions of the Articles of Incorporation are as follows: * * *
"SECOND: That the purposes for such corporation being formed are solely educational, social, charitable and for the rendering of services of mutual benefit, education and assistance to the members thereof which will not involve the distribution of any profits or dividends to the members of said corporation; to foster the best interests of the members of said corporation, and to promote through, Rodeos and Riding Clubs, the civic welfare of the Town of Barstow, the neighboring communities, and the members of the corporation. "THIRD: That the principle office for the transaction of business of said corporation shall be located in the Town of Barstow, County of San Bernardino, State of California. "FOURTH: That said corporation is not being formed for the purpose of, nor does it contemplate pecuniary gain or profit to the members thereof. * * *
"NINTH: *48 That there shall be no capital stock but that there shall be issued to each member a certificate of membership which shall be non-assignable and non-transferable." * * *
The constitution and by-laws of the Club state: "The objects of this Club shall be to promote the art of horse-back riding, roping, and care and handling of livestock." The Club was formed by thirteen male residents of Barstow, California, an isolated town of about 2,300 people, situated in the middle of the Mojave Desert. When the Club was organized in 1945, Barstow was practically devoid of entertainment facilities. To meet this need, the founders formed the Club so that they and their families might pursue their hobby of riding horses and related sports. It was also contemplated that the Club would sponsor rodeos for the pleasure of the entire community. Originally the Club had about 30 members, counting both the men and their wives. By the end of 1949 the Club had from 60 to 80 members. New members were first nominated by someone already a member, passed on by a secret committee, and then voted on by the entire Club. The initiation fee for adults was $5.00. Annual dues were $25 per couple, but, to *49 avoid tax liability, were lowered to $9.00 per person. The original members loaned $3,200 to the Club so that it might begin operating. Except for $100 returned to a widow in financial straits, none of the loans have been repaid, nor is repayment contemplated in the foreseeable future. A gun club was formed within the Club membership which pays to the Club an annual rental of $60 for the use of five acres. Shortly after incorporation the Club purchased 40 acres of unimproved desert land for $1,500. The Club members then constructed a club house, and each individual member built his own corral. A holding pen, rodeo ground, and open barn were constructed. Later a concrete dance floor was laid and a kitchen was added to the club house. All of the improvements were built, for the most part, with used lumber and old railroad ties which were donated to the Club. The only major expenditure was for mesh fence which was used in the construction of the rodeo ground. Virtually all the work was done by members of the Club free of charge. The furniture and fixtures were donated by one of the members. At the end of 1949 the total assets of the Club had a value of approximately $8,000. Since most *50 of the materials and labor were donated, the actual cost to the Club was much less. The organized activities of the Club consist of a monthly directors' meeting, a Club meeting, and a party for the members and their guests. For the children there is calf roping on Sundays. As the members purchase their own food at the monthly party, all of these activities cost the Club very little. The amount expended by the Club for land, improvements, and normal activities has not exceeded the members' contributions in the form of loans, initiation fees, annual dues, and rent. Since 1947 the Club has sponsored an annual rodeo. The rodeo is held for the pleasure of the members of the Club and the entire community. The rodeo lasts three days and consists of a parade, a free horse show on Friday, a rodeo on Saturday and Sunday, and a dance each night. The rodeo was too large an undertaking for the Club members alone, so various members of the community and civic organizations have contributed their services. A free party was held each year for those who had worked on the rodeo. To meet the cost of the rodeo, admission was charged for the shows on Saturday and Sunday and for the dances on Friday *51 and Saturday nights. Beer, soft drinks, and chances on prizes, and advertising space in the rodeo program were sold. The Club expected to make no profit on the rodeo, and, in fact, contemplated a loss. That no profits were actually realized is shown by the fact that the Club's net income was almost the same in 1946, when no rodeo was held, as the average net income for the years 1947, 1948, and 1949. In 1952 the rodeo resulted in a loss to the Club of about $1,000. Opinion Petitioner contends that it is an exempt corporation under section 101 (9), Internal Revenue Code. Section 101 (9) exempts from taxation: "Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the earnings of which inures to the benefit of any private shareholder;" Section 29.101 (9)-1 of Regulations 111, relating to this provision, is as follows: "SOCIAL CLUBS. - The exemption granted by section 101 (9) applies to practically all social and recreation clubs which are supported by membership fees, dues, and assessments. If a club engages in traffic, * * * for profit, such club is not organized and operated exclusively for *52 pleasure, recreation, or social purposes. * * *" The statute and regulations quoted above are substantially identical with the previous statutes and regulations. "The implication is that Congress approved of the interpretation adopted by the Commissioner." Juniper Hunting Club, Inc., 28 B.T.A. 525, 529. In order to qualify as an exempt corporation under section 101 (9), petitioner must show that it was organized and operated in substantial compliance with the terms of that section as interpreted by the Commissioner. American Automobile Association, 19 T.C. 1146 (on appeal C.A.D.C. and C.A. 4). Respondent contends that petitioner has not met this requirement. He states that by charging admission to the rodeo and dances and by selling beer, soft drinks, chances and advertising space in connection with the rodeo, petitioner was engaging in traffic for profit. He further states that these activities resulted in net income to the Club which inured to the benefit of its members. The evidence does not sustain respondent's contentions. The rodeo was not held in order to derive a profit, but for the pleasure and recreation of both members of the Club and the *53 people of Barstow. Admission was charged and beer, soft drinks, chances, and advertising space were sold in order to meet the expenses of the rodeo. The rodeos have not been a source of income to the Club. Where the returns from transactions with outsiders, taken by and large, are no more than a reimbursement of their cost to the Club, the Club does not lose its exemption. Jockey Club v. Helvering, 76 Fed. (2d) 597; Coeur d' Alene Country Club v. Viley, 64 Fed. Supp. 540. In the instant case, the outsiders were, in essence, reimbursing the Club for the cost of the rodeo held for their benefit. All the activities of petitioner have been exclusively for pleasure and recreation. Cf. Anderson County Country Club, 2 T.C. 1238; Coeur d' Alene Country Club, supra. Unlike the taxpayers in Aviation Club of Utah v. Commissioner, 162 Fed. (2d) 984; West Side Tennis Club v. Commissioner, 111 Fed. (2d) 6; and Jockey Club v. Helvering, supra, which are cited by respondent, the Club has not engaged in traffic with outsiders from which it derived income that inured to the benefit of its members. Therefore, *54 in the taxable years involved, petitioner qualified as an exempt corporation under section 101 (9), Internal Revenue Code. Decision will be entered for the petitioner.