SANTEE CLUB v. WHITE, Former Collector of Internal Revenue.

No. 3180.

Circuit Court of Appeals, First Circuit.

Dec. 10, 1936.

**6**

James W. Mudge, of Boston, Mass. (Ropes, Gray, Boyden & Perkins, of Boston, Mass., on the brief), for appellant.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., and Arthur Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass., on the brief), for appellee.

William R. Gregg, of Washington, D. C., amicus curiæ.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an action at law to recover income taxes assessed and paid for the year 1930 under the Revenue Act of 1928 (45 Stat. 791). The District Judge gave judgment for the defendant. He has stated the facts, and the question is whether on such facts the defendant was entitled to judgment.

The Revenue Act of 1928 levied "upon the net income of every corporation, a tax of 12 per centum"; it exempted certain corporations from the tax, the exemptions being carefully defined in exempting clauses (Revenue Act 1928 c. 852 §§ 13, 103, 45 Stat. 791 [26 U.S.C.A. §§ 13, 103 and notes]). In the present case the tax-payer is admittedly subject to the tax unless it comes within the ninth exempting clause which reads as follows:

"(9). Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder."

The Santee Club was organized in 1898 under the membership corporation law of the state of New York which was not applicable to corporations "organized for pecuniary profit." The clerk's certificate of incorporation states that: "The particular business or object of the Club shall be to acquire a tract or tracts of land in the State of South Carolina, and maintain the same as a hunting and fishing preserve, and as a pleasure and health resort for its members." The objects of the Club as set forth in more detail in its constitution emphasize the noncommercial character of its activities. * The District Judge found: "It is clear that the Club in its organization was organized for pleasure, recreation and other nonprofitable purposes."

After its organization the Club purchased about 25,000 acres of land in South Carolina which it developed as a hunting, fishing, and recreation preserve for the use of its members. A good deal of the land was timberland. The government suggests that it was used for producing turpentine. This is strenuously denied by the appellant, and we think the evidence does not bear out the government's interpretation of it. In 1930 a relatively small portion of the Club's property, about 1½ per cent. of the total tract, which had been used for wild fowl shooting, became valueless for that purpose by reason of the growth of a food-destroying weed, so that wild ducks no longer resorted to it; it was of no further use to the Club. The Club sold it at a profit of $4,411.60 over its cost. The money received from the sale was carried into the Club's treasury and was used for improvements on other parts of the Club property and for the general purposes of the Club. None of it was distributed to the members, nor were the usual dues diminished. The directors of

---

* (1) "To acquire tracts of land in the State of South Carolina, and to use and maintain the same as a private preserve for the benefit of its members for the purpose of hunting, fishing, yachting, health, rest, and recreation."

(2) "To raise, propagate, preserve and capture wild game, birds, wild fowl, fish, shell-fish, terrapin, cattle or other live stock, for the use and benefit of the Club."

(3) "To raise such plantation, farm and garden products, upon real estate owned by the Club, as the Club may desire, and to sell or otherwise dispose of the same."

the Club evidently thought it best to sell at a profit the tract which had become useless for the Club's purposes, and to use the proceeds on the rest of the property. The Commissioner taxed the profits on this sale as income. The question is whether he was right in doing so.

■ The exemptions are accorded to specified corporations, not to specified transactions. In order to be within the exemption, it must appear, as the District Judge said, that the Club in question was (1) *organized* exclusively for pleasure, recreation, and other nonprofitable purposes; (2) that it had been *operated* exclusively for such purposes; and (3) that no part of its net earnings *inured to the benefit* of any of its shareholders. The first of these requirements is met in the present case by the finding of the District Judge above quoted. This finding is challenged by the Government which contends that the third of the objects of the Club as stated in its constitution (supra) indicates that it was organized in part at least for profitable activities. We are unable to agree with this view. We think it clear that considering the provisions of the certificate of incorporation and of the constitution of the Club in connection with the statute under which the Club was organized, it is clearly apparent that the Club was organized for nonprofitable purposes. The last clause in the third object, "and to sell or otherwise dispose of the same," which is relied on by the Government, refers, we think, to a disposal of surplus produce, not to a purpose of engaging in the business of raising produce in a commercial way.

■ The third requirement above referred to was also met. No part of the profit on the sale of real estate in question inured to the benefit of the Club's shareholders except through their use of the Club facilities, which is clearly not the benefit referred to in the exempting clause of the statute, supra.

■■ As to the second requirement, the Commissioner's contention is that the sale in question is "not incidental to the activities of a Club whose particular object was to acquire and maintain a tract of land for Club purposes"; that the Club was not "operated exclusively for pleasure, recreation and other nonprofitable purposes"; and that the case falls within article 530 of Treasury Regulations 74, viz., "If a club, by reason of the comprehensive powers granted in its charter, *engages* in traffic, in agriculture or horticulture, or *in the sale of real estate*, timber, etc., *for profit, such club is not organized* and operated exclusively for pleasure, recreation, or social purposes, and any profit realized from such activities is subject to tax." On the facts stated it seems to us too clear for any reasonable finding to the contrary that the sale of the tract in question was incidental to the general purposes of the Club. It was not made in pursuance of any plan to change the general purposes or activities of the Club, nor did it change them; they continued as before; the proceeds of the sale went to further them. The Club was not obliged to hold indefinitely a piece of property which for its purposes had become valueless. This is obviously true as to personal property, and we see no reason why the same principle does not apply to real estate. Moreover, it seems to us very doubtful whether the single transaction here in question entered into as an incident to the Club's general activities, and not as a part of a course of business for profit, constituted *engaging in the sale of real estate for profit* under article 530 of the Treasury Regulations above quoted. A single transaction of incidental character does not constitute engaging in business. "A single, isolated activity * * * does not constitute a trade, business, profession, or vocation," etc. Lederer v. Cadwalader (C.C.A.) 274 F. 753, 756, 18 A.L. R. 411.

The exemption under consideration must be considered in connection with the other exemptions of the same section. The sixth is very similar in its language to the ninth, viz., "(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual." The similarity of this exemption to that under discussion is obvious. It was construed in Trinidad v. Sagrada Orden, etc., 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458. In that case the question was whether a religious corporation which appears to have engaged rather extensively in business operations was taxable on the profit which it made on the sale of stocks, of wine, of chocolate, and of other articles; the profits on such sales went into

its general income and were used for its religious purposes. It was held that such profits were not taxable as income. "We think they do not amount to engaging in trade in any proper sense of the term." Van Devanter, J., page 582 of 263 U.S., 44 S.Ct. 204, 206, 68 L.Ed. 458. Some of the articles referred to were supplied for use within the plaintiff's own organization or for uses incidental to the work for which it was carrying on. But that fact seems not important on the question under discussion. The Government's contention was that the profits were taxable as income, and the decision was that they were not, because the transactions in which the profits occurred were merely incidental to the nonprofitable business in which the corporation was engaged.

The purpose for which the corporation, if otherwise exempt, engaged in the transaction in question is the test. An exempt corporation must keep its activities within the scope of the exemption or it will be taxable on such as are outside it. The distinction is illustrated by Juniper Hunting Club v. Commissioner, 28 B.T. A. 525, in which a club formed for purposes of recreation bought a tract of land in Florida before the real estate boom there. The value of the tract largely increased and the club sold it at a large profit. It then distributed to its members a large proportion of the proceeds. The sale was obviously arranged for the sole purpose of realizing a monetary profit and distributing it to the stockholders. The District Judge fell into error in confusing the recreation value of the tract sold with its commercial value. A recreation club often, perhaps generally, makes a profit on the services which it furnishes to its members. Such profits are not taxable as income because they are only incidental to the general nonprofitable purpose for which the Club is organized and operates. Sales of real estate or fixed property are as we have said to be judged by the same test. Are they made as an incident to the regular activities of the Club, or are they entered into in disregard of those purposes for the purpose of profit? The transaction under discussion was clearly of the former character. The profit therefore was not taxable as income.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.