**KOON KREEK KLUB v. THOMAS,**
Collector of Internal Revenue.
**SAME v. UNITED STATES.**
No. 9187.

Circuit Court of Appeals, Fifth Circuit.
Dec. 28, 1939.

Eustis Myres, of Dallas, Tex., for appellant.

Maurice J. Mahoney and Sewall Key, Sp. Assts. to Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., and John A. Erhard, Asst. U. S. Atty., of Dallas, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment of the district court denying recovery in a suit to recover income and capital-stock taxes alleged to have been illegally collected from appellant for the years 1934 and 1935.

Appellant was incorporated in 1902, under the laws of Texas, as a fishing and hunting club, maintaining club house, boats,

and fishing and game preserves for the pleasure and amusement of its members.[1] To carry out its purpose, appellant acquired a tract of land containing 6,777 acres, which completely surrounded a tract of 340 acres owned and occupied by one Thomas. The club was unable to purchase the land of Thomas, and the latter used the land of the club for pasture, despite its efforts to prevent his doing so; but this use did not seriously affect the use by the club of its preserves, and it later availed itself of an amendment to the corporation laws of the State of Texas to amend its charter so as to allow "the raising of such live stock for profit only as the preserves of such club will maintain." Thereafter, it granted grazing privileges to Thomas for a consideration of $500 per year, and, for a period, extended similar privileges to its manager for $100 per year. The reasons given for these leases were that the lease to Thomas was necessary to keep the peace and good will of that individual, and that the other effected a saving in salary to the manager.

Prior to the tax years in question, appellant received income in the form of dues from its members, which, at that time, averaged about $12,500 per year. Oil was discovered about seven miles from the club property, and in July, 1934, while the oil leasing activity resulting from this discovery was still at its height, appellant granted an oil lease on its entire property for a consideration of $4 per acre with an annual renewal rental of $1 per acre, reserving the usual royalties. The lease was not renewed, and the amount received was used to reduce or retire a mortgage which had been outstanding against the property since it had been acquired by the club.

The question of tax liability here involved turns upon the interpretation of Section 101 (9) of the Revenue Act of 1934.[2] Thus, in order to establish its exemption, appellant must show (1) that it was organized exclusively for non-profitable purposes, (2) that it is operated exclusively for non-profitable purposes, and (3) that no part of its net earnings inures to the benefit of any private shareholder. Appellee contends that it fails to establish any one of these three requirements, since (1) its charter allows it to raise live stock for profit, (2) it leased land for grazing purposes and for oil development, and (3) the stockholders' interests were enhanced by the payment of the mortgage against the property.

The provision of the charter authorizing the club to engage in the business of raising live stock for profit, having been brought about by the prosecution of the original purpose of the club, and having been exercised to that end alone, does not change the character of the corporate entity from one clearly exempt, under the terms of the act, to one outside the exemption provisions. The express grant of authority must be construed in the light of the admitted purpose and operation of the club and its needs to accomplish its ends, and not abstractly to draw it within the terms of the statute, without regard to its purposes and intentions as a matter of fact. We do not find this doctrine to be in conflict with the case of Helvering v. Coleman-Gilbert, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278, in which it appeared that the taxable purposes were intended in the creation of the organization, but escape was sought on the ground that they had not been carried out. Appellee also relies upon the case of Santee Club v. White, 1 Cir., 87 F.2d 5, in which the exemption was allowed on the sale of a portion of the club property which had become worthless, but in which the case of Juniper Hunting Club, Inc. v. Commissioner, 28 B.T.A. 525, was referred to as a typical case in which a club would lose its exempt status. The holding in the latter case was that the sale of a large part of the preserve was made for the purpose of financial gain to the members; but in the instant case, whatever financial gain was realized was incident

---

[1] The purposes of the club, as set forth in its original charter, were as follows: " * * * the establishment and maintenance of a fishing, hunting, and boating club, the protection, preservation, and propagation of fish and game; the purchase and ownership of such land and bodies of water as may be necessary in connection therewith, and the building thereon of a club house and such other improvements as may be necessary; and also for the pleasure, recreation and divertisement of its membership."

[2] "The following organizations shall be exempt from taxation under this title [chapter]—* * * "(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder * * *." 26 U.S.C.A. § 103(9).

to and directed toward the accomplishment of the purposes upon which the exemption is based.

The other cases relied upon by appellee in support of its contention that the club was organized for profit are clearly inapposite. In one case,[3] the corporation was admittedly organized for gain or profit, but the exemption was claimed because its ownership had passed to another entity, itself exempt under the statute, and was being used in the furtherance of the exempt purposes, although no change had been made in its corporate status or structure, and its business and operations remained the same. In the other cases,[4] the purposes of the organizations from the outset were to render valuable services to their members. These cases serve as illustrations of the principle that profits may consist in more than accruals or dividends reckoned in money or even other standards of value; but they do not tend to show that an organization, the purpose of which is the establishment and maintenance of a fishing, hunting, and boating club, is not for pleasure, recreation, and other non-profitable purposes, within the meaning of the act, especially where the charter provides to the contrary and the facts demonstrate that it was organized and is operated exclusively for the non-profitable purposes mentioned.

The contention that the club did not operate exclusively for non-profitable purposes because of the leases of grazing rights is equally without foundation. In order to maintain its houses and preserves, it was required to raise funds from some source. That these funds might be derived from a use of the properties themselves, not inconsistent with the purposes for which they were maintained, would not change the nature of the operation any more than an increase in dues charged to members. Indeed, if the club could be made self-sustaining by grazing fees, guest fees, and other perquisites, its operations being for the stated purposes, its exempt status would not be affected. We need but to extend this principle to the acquisition of the preserves themselves to demonstrate that the granting of oil leases to obtain money with which to pay the mortgage debt did not change the character of the organization.

The assumption that the club intended to discontinue its recreational features and operate for the profit of its members, if oil should be discovered on its preserves in paying quantities, is without support in the evidence; but if this be assumed, the intention never bore fruit in any move or act to change the character of the organization, or its methods of operation. It continued to provide for the pleasure and entertainment of its members, and no part of its net earnings inured to the benefit of any of its shareholders in any other form.

This brings us to appellee's third contention, that the reduction in liabilities necessarily resulted in a reduction in dues and assessments, or liability therefor, and therefore resulted in a benefit to the shareholders. Viewed in the light of the statute, this contention refutes itself. The obvious answer is that the exemption applies to profits so long as they are retained by the organization or used to further the purposes which are made the basis of the exemption, and are not otherwise used for the benefit of any private shareholder. The authorities relied upon by appellee on this point,[5] like those cited in Note 4, supra, are cases in which the original purpose of the organization was to render a service of value or benefit, not within the exemption allowed by the statute.

We think the question is controlled by the decision in Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458, wherein the court points out that the statute says nothing about the source of the income, but makes its destination the ultimate test of exemption. The act here involved provides exemption for "clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder," while the statute before the Supreme Court provided exemption for corporations "organized and operated exclusively for religious, charitable, scientific or educational purposes, no

[3] Sun-Herald Corporation v. Duggan, 2 Cir., 73 F.2d 298.

[4] Northwestern Jobbers' Credit Bureau v. Commissioner of Internal Revenue, 8 Cir., 37 F.2d 880; Louisville Credit Men's Adjustment Bureau v. United States, D.C., 6 F.Supp. 196.

[5] Uniform Printing and Supply Co. v. Commissioner, 7 Cir., 33 F.2d 445; Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., 37 F.2d 880.

part of the net income of which inures to the benefit of any private stockholder or individual." The necessity of having money to carry on the enterprise, whether charitable or recreational, is present in both cases. Deriving funds from the properties owned to further either of these ends would be no more a departure in one case than in the other.

The judgment of the district court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.