MILL LANE CLUB, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46759. Filed November 30, 1954.

*Samuel B. Seidel, Esq.*, for the petitioner.
*Donald J. Fortman, Esq.*, for the respondent.

434

OPINION.

ARUNDELL, *Judge:* Petitioner is a membership corporation which operated primarily as a luncheon club during the period here material. It was formed in 1888 and was exempt from income taxes prior to 1928.

The statute applicable to this case is section 103 of the Revenue Act of 1928 [1] which is equivalent to section 101 (9) of the Internal Revenue Code of 1939. No question of the statute of limitations is involved, although the crucial transactions occurred in 1928 and the year involved is 1928. The petitioner did not file a return covering these transactions until some years later, and the deficiency notice was timely issued in relation to the date of the return.

For approximately 5 years prior to 1928, the petitioner had been losing members and money and it had become apparent by this year that the club would soon have to dissolve because of the decline in membership.

---

[1] Revenue Act of 1928:

SEC. 103. EXEMPTIONS FROM TAX ON CORPORATIONS.
   The following organizations shall be exempt from taxation under this title—
   * * * * * * *
   (9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder;

The major asset of the club was its clubhouse and the property on which it was constructed located in the financial district in New York City. The property had been acquired in 1910 for a clubhouse.

Some time prior to June 1928, the adjoining owner offered to buy the property. The offer was put before the membership and it was voted to accept the offer, sell the property, pay off the club's indebtedness with the proceeds, and distribute the balance among the members and terminate the club's existence.

The property was sold on August 1, 1928, for $200,000. The petitioner realized a net gain of $31,190 from the sale and, after the payment of obligations, the club operations resulted in net earnings of $26,166 in 1928. The premises were occupied by the petitioner on a short lease subsequent to the sale in order to permit the termination of its affairs. Club operations ceased on August 21, 1928, and in September each member received $200 in partial distribution of the club's assets with the notification that further and final distribution would be made. Technically, the club is still in existence although it has conducted no activities since August 1928.

The essence of the respondent's position is that the sale of the club property at a profit and the distribution of the profit among the members destroyed the club's exemption from income taxation. The petitioner argues that the sale of its property and distribution of its assets pursuant to a plan of dissolution does not destroy the exemption, even if the members receive some profit in the distribution.

To qualify for the exemption from income taxes, a social club must be: (1) *Organized* exclusively for pleasure, recreation, or nonprofitable purposes, (2) *operated* exclusively for pleasure, recreation, or nonprofitable purposes, and (3) no part of the net earnings of the club may inure to the benefit of any private shareholder. *Santee Club* v. *White*, (C. A. 1) 87 F. 2d 5.

It is conceded that the petitioner was organized exclusively for pleasure, recreation, and nonprofitable purposes. Also, as noted above, it is conceded that it was always operated exclusively for these purposes prior to 1928, and prior to that year it had no net earnings and nothing inured to the benefit of any member.

The respondent contends, first, that the petitioner was not operated exclusively for pleasure, recreation, and nonprofitable purposes during 1928 because it sold its clubhouse property at a profit on August 1, 1928. For this position, the respondent relies principally on *Juniper Hunting Club, Inc.*, 28 B. T. A. 525. In that case, this Court held that a sportsmen's club lost its exemption under section 231 (9) of the Revenue Act of 1926 by selling a large tract of its game preserve and distributing a portion of the proceeds to the members. The facts of that case indicate that the property had increased in value because

of a local land boom, and taxes on it were expected to rise sharply. The property had become too valuable to hold as a game preserve and the club sold it, taking advantage of the enhanced value. But, it was noted that there was no intention of discontinuing the club and it continued to function following the sale. Only a single sale was involved and, consequently, it could not be concluded that the club was in the real estate business. However, we held that the "sale was a violent departure from the regular activities of the Club. It was not a mere incident to the regular functions of the Club * * *. Financial gain was the principal end to which the sale of the land was directed." (28 B. T. A. at p. 529.)

The petitioner relies principally on *Santee Club* v. *White, supra,* and the change it brought in the respondent's regulations. In that case, a hunting club with a preserve of 25,000 acres sold off a small tract which had become useless for hunting. The property was sold at a profit and the proceeds paid into the club's treasury for general purposes. None of the money was distributed to the members, nor were the usual dues diminished. The court stated that the facts clearly showed that:

the sale of the tract in question was incidental to the general purposes of the Club. It was not made in pursuance of any plan to change the general purposes or activities of the Club, nor did it change them; they continued as before; the proceeds of the sale went to further them. The Club was not obliged to hold indefinitely a piece of property which for its purposes had become valueless. This is obviously true as to personal property, and we see no reason why the same principle does not apply to real estate. Moreover, it seems to us very doubtful whether the single transaction here in question entered into as an incident to the Club's general activities, and not as a part of a course of business for profit, constituted *engaging in the sale of real estate for profit* * * *. A single transaction of incidental character does not constitute engaging in business. [87 F. 2d 5, at p. 7]

Prior to the decision in *Santee Club* v. *White, supra,* the respondent's regulations read, in part:

If a club, otherwise exempt, sells any of its property at a profit, it is not exempt for the taxable year for which the profit is taxable. [Regs. 86, art. 101 (9)–1; Regs. 94, art. 101 (9)–1.]

Literally, under the foregoing regulation, a sale of club property at a profit under any circumstances destroyed the organization's exemption. However, after the decision of the First Circuit in *Santee Club* v. *White,* the regulations were modified by substituting for the foregoing a more lenient provision stating:

Generally, an incidental sale of property will not deprive the club of the exemption. [T. D. 4760, 1937–2 C. B. 128.]

Subsequent decisions of this Court, and others, have followed the reasoning of *Santee Club* v. *White,* and the respondent's modified

regulations, and it appears now to be established that sales of property at a profit will not cause a social club to lose its exemption provided the sale is incidental to the club's purpose and any gains or net earnings from the transactions do not inure to the private stockholders of the club. *Anderson Country Club*, 2 T. C. 1238, 1243; *Koon Kreek Club* v. *Thomas*, (C. A. 5) 108 F. 2d 616.

Therefore, the sale of the petitioner's clubhouse, at a profit, does not automatically destroy the exemption. We must inquire whether the sale was purely for profit-taking or whether it was prompted by circumstances, incidental to the club's purpose, which required a sale. We think in the circumstances of this case that the sale was not to realize the profit resulting from the appreciation in value of the club property. The record leaves no doubt that the only reason for the sale of the petitioner's principal asset was to facilitate the dissolution of the club. A sale in such circumstances does not amount to a business or commercial activity to the extent that we could say, realistically, that during the last days of its operation the club was not operated exclusively for recreational or other exempt purpose. This transaction was obviously a singular event in the club's history; it would be a unique event in any organization's history. Presumably, it is impossible to dissolve the group more than once and the single, final, and most important transaction to facilitate the dissolution does not convert a social club into a real estate business.

We have remaining the question raised by the fact that a portion of the profits resulting from the sale was distributed to the members. The respondent contends that this distribution allowed net earnings to inure to the benefit of the members and the exempt status of the group was lost. We do not agree with the respondent's conclusions.

Every social or recreational group has a reasonable prospect of being disbanded and dissolved. It was recognized in early interpretations that provisions in the charters of clubs which permitted division of club assets among members upon dissolution did not destroy the exempt status of such groups. It is stated in one interpretation that:

It is well settled that the fact that the assets of a club will, upon dissolution, be paid to members or shareholders is not alone sufficient to make the organization liable to render income tax returns. [S. M. 2710, III–2 C. B. 230.] [2]

The respondent cites us to no authority or interpretation which is contrary to the above, or which indicates that the dissolution of a social club and the distribution among the members of the assets containing a small increment of gain destroys the exemption. And we think it would be somewhat a strange result to hold on the facts here that an organization which was exempt from income taxes for the entire period of its existence lost that status by the last act of its life.

---

[2] See also S. M. 958, 1 C. B. 203.

Moreover, we do not think that the distribution which petitioner's members received can be properly characterized as net earnings. What each received was his pro rata share in the assets of the organization and the only reason that the club property was sold was to convert the assets into easily divisible form. We suppose, for example, that the club could have distributed the club property by giving each member a co-tenant's share in the ownership of the property, and then dissolved after assessing the members for the outstanding debts of the club. The members could then have joined together as individuals and sold the property without any gain to the club, although the net share ultimately received by each member would have been the same as that received through the steps that were actually followed in this case. However, the distribution of the property in kind to the individual members would have been a clumsy method of distributing the club's assets. It was a more efficient technique to convert the property into cash, pay off the club's debts, and divide the remainder. Such action was not a distribution of net earnings but a final division of assets and this final transaction does not cost the club its exemption from income taxes for the final year of its operation.

In the words of the *Santee Club* decision, when the members determined to dissolve, they were "not obliged to hold indefinitely a piece of property which for its purposes had become valueless." Neither the sale of the property nor the distribution of part of the proceeds in final division of the assets caused the club to lose its exemption from income taxes.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

HARRON and LEMIRE, *JJ.*, dissent.