CATE DITCH COMPANY, a corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 89-60-K.

United States District Court
S. D. California,
Central Division.

April 21, 1961.

Burton & Gauldin, by R. Jackson Gauldin, Whittier, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., Robert H. Wyshak, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

KUNZEL, District Judge.

This cause was submitted for decision upon written stipulation of facts, which facts are hereinafter set forth.

Cate Ditch Company is a California corporation organized to operate an irrigation ditch company for the benefit of its member stockholders; and from 1930 until 1956 it enjoyed the status of a tax-exempt corporation under I.R.C. § 501(c) (12), 26 U.S.C.A. § 501(c) (12). In 1956, contemplating dissolution, the taxpayer sold its pipelines, easements, and equipment, with the result that 91.66% of the corporation's income for that year consisted of gains from the sale of those capital assets. The taxpayer does not contend that its plan of dissolution was a non-taxable one under I.R.C. § 337, 26 U.S.C.A. § 337. The sole issue in this case is whether or not it retained its tax-exempt status in 1956.

Section 501(c), 26 U.S.C.A. § 501(c), is a list of exempt organizations; section 501(c) (12) provides as follows:

"Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 percent or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses."

The contention of the government is that it is the plain and simple language of subsection (c) (12) which compels a judgment in its favor. That subsection requires that no more than 15% of the year's income be derived from sources other than amounts collected from members to meet losses and expenses; but in the instant case 91.66% of the year's income was derived from gains on the sale of capital assets. The government relies on a recent decision of the Tax Court in Mountain Water Co. of La Crescenta, 35 T.C. No. 50 (Dec. 13, 1960). That case, involving facts almost identical to those in the instant case, resulted in judgment for the taxpayer, but only because its dissolution plan qualified as a non-taxable one under I.R.C. § 337. In the Mountain Water case the taxpayer contended that gains from the sale of its capital assets were not actually "income" within the meaning of the statute, on a theory that "income" meant only income from rents, interest, dividends, royalties, and the like, as specified in I.R.C. § 822(b), 26 U.S.C.A. § 822(b). Such is the express determinative language of § 501(c) (15) pertaining to mutual insurance companies; and the taxpayer urged a liberal construction of subsection (c) (12) to incorporate the standard used in subsection (c) (15). The Tax Court in rejecting that interpretation of subsection (c) (12) pointed out first, that the legislative history shows clearly that subsections (c) (12) and (c) (15) were not enacted with the same purpose in mind; secondly, that (c) (15) contains express language referring to I.R.C. § 822(b) for a definition of "income" whereas subsection (c) (12) does not; and thirdly, that there is no reason to read subsection (c) (12) any differently from what its plain language indicates. Accordingly, the Tax Court held that capital gains must be included in the corporation's income to determine whether or not more than 15% of the corporation's income was derived from sources other than amounts collected

from its members. Thus, the corporation in the last year of its existence before dissolution became non-exempt.

In the instant case the taxpayer presses an argument which was apparently not raised in the Mountain Water case, and in addition points out that this court is not bound by decisions of the Tax Court. The taxpayer here would draw an analogy to the current interpretation of § 501(c) (7) which applies exemption to social clubs:

> [§ 501(c)] "(7) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder."

The taxpayer correctly asserts that in cases arising under subsection (c) (7) an incidental sale of capital assets need not of itself render the corporation non-exempt and urges a similar liberal construction of subsection (c) (12). The government interposes the objection that the Regulation to subsection (c) (7) expressly provides that an incidental sale of capital assets will not destroy exemption; but that objection is swept aside by the fact that the Regulation itself is based upon a court decision which I shall now discuss.

In Santee Club v. White, 1 Cir., 1936, 87 F.2d 5, the court dealt with a tax-exempt club under the predecessor of sub-section (c) (7). The club sold off land which was no longer useful for its purposes and used the proceeds of the sale for general club purposes. Although the sale of the land did result in a capital gain or "profit", the reasons for the sale and the use to which the proceeds were put were nevertheless consistent with the club's operation for "nonprofitable purposes." Such an incidental sale did not mean that the club was then being operated for profit. This rule for cases under subsection (c) (7) has been repeatedly followed.

The other authority on which the taxpayer relies here is Mill Lane Club, Inc., 23 T.C. 433 (No. 52), which involved a situation under (c) (7) where the club sold its capital assets in contemplation of dissolution. The Tax Court upheld the tax-exempt status on the theory that the sale of the capital assets was an incidental sale, without the profit motive, and that the conversion of the assets into cash before distribution to the club's members was merely more convenient and sensible than distributing to each member an undivided fraction of an interest in each asset (in which case there would, of course, be no "net earnings" to destroy tax-exempt status). But the Mill Lane case has no more or less bearing on the instant question than does the Santee case; as to the question of "incidental" sales, it merely follows the Santee rule; any other discussion concerning the dissolution aspect is irrelevant to our case if an "incidental" sale will destroy tax exemption under subsection (c) (12).

The fundamental weakness of the taxpayer's argument lies in the very language of the two subsections. Subsection (c) (7) speaks in terms of "Nonprofitable purposes;" subsection (c) (12) speaks in terms of percentage of "income." The Santee rule merely says that an incidental sale does not conclusively show that the taxpayer is being operated for purposes of profit. By no stretch of the imagination can the rule be interpreted to mean that profit from an incidental sale is not "income" at all. In subsection (c) (12) there is no inquiry into corporate purposes; there is merely a requirement that at least 85% of the taxpayer's income consist "of amounts collected from members for the sole purpose of meeting losses and expenses."

In accordance with the foregoing, which shall constitute findings of fact and conclusions of law, the government shall submit a judgment in its favor.

This result is reluctantly reached, as it is a harsh one for the taxpayer. However, the remedy is for Congress to provide.