Litle v. Worldwide Collectibles      CV-95-126-B   02/26/96
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW HAMPSHIRE


Litle & Company, Inc.

     v.                                  Civil No. 95-126-B

Worldwide Collectibles Network, Inc.,
Richard Adeline, and August L. Blevins


                        **O R D E R**

     Pending before me is defendant Richard Adeline's motion to
dismiss Litle's complaint against him for lack of personal
jurisdiction and, in the alternative, to dismiss the
misrepresentation count for failure to plead fraud with
sufficient particularity.  In response, Litle contends that
personal jurisdiction exists based on Adeline's business activity
with Litle in New Hampshire and that its allegations are
sufficient to meet the particularity requirement of Federal Rules
of Civil Procedure 9(b).  Litle also requests an opportunity to
amend its complaint before the claim is dismissed for lack of
particularity.  For the following reasons, I deny the motion to
dismiss and grant Litle's request to amend.

# I.  BACKGROUND[1]

Litle & Company, Inc. operates its business in Salem, New Hampshire, processing credit card deposit transactions for direct marketing merchandisers.  Litle entered into a business agreement with Worldwide Collectibles Network, Inc. ("WCN") in September 1994 to process WCN's credit card transactions generated by its television home shopping network.  WCN is located in Florida and its president, Richard Adeline, is a Florida resident.  August Blevins, an owner of WCN and a signatory on the agreement between WCN and Litle, is a resident of Ohio.

The Litle-WCN agreement required WCN and Blevins to reimburse Litle for "chargebacks" which occur when customers' charges are reversed after WCN has received credit from Litle for the sale.  Their agreement obligated WCN to maintain a reserve fund with Litle to prepay the chargebacks and to refund amounts in excess of the reserve within one business day of notification of the deficit.  Blevins and WCN represented to Litle that WCN would not submit credit card transactions to Litle for processing until the purchased products were shipped to the customers.

---

[1]  The facts are taken from the complaint consonant with the standard for a motion to dismiss.

2

On December 19, 1994, Litle became aware of problems with the WCN account including an excessive number of chargebacks and complaints from customers that they were being charged for products that WCN never shipped. WCN and Adeline represented to Litle that WCN was not charging customers for unshipped products. Because the irregularities in the WCN account continued and WCN failed to pay its reserve deficit as required by the agreement, Litle terminated the agreement on January 17, 1995.[2] Since then, WCN and Blevins have failed to pay the outstanding deficit.

Litle filed suit against WCN, Blevins, and Adeline on March 13, 1995, alleging counts of breach of contract against WCN and Blevins, and counts of misrepresentation and unfair or deceptive trade practices against Adeline and Blevins. Adeline, appearing pro se, moves to dismiss the complaint as to him for lack of personal jurisdiction, or in the alternative, to dismiss the misrepresentation claim against him for failure to comply with the particularity requirement of Federal Rule of Civil Procedure 9(b). I turn to the merits of his motion.

---

[2] Although the complaint says 1994, in context the date was clearly intended to be 1995.

3

## II.  DISCUSSION

Following logical sequence, I first address Adeline's challenge to this court's exercise of personal jurisdiction, and then resolve the question of the sufficiency of Litle's allegations of fraud.

### A.  Personal Jurisdiction

When personal jurisdiction over a defendant is contested, the plaintiff has the burden of showing that such jurisdiction exists.  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). To carry the burden of proof when there has been no evidentiary hearing, the plaintiff must make a prima facie showing by submitting "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992).  As in the standard for summary judgment, the plaintiff "ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts," and the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" making its ruling as a matter of law.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995), United Elec. Workers v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir.

4

1993).  An evidentiary hearing is necessary only if the court
determines that it would be unfair to the defendant to resolve
the issue without requiring more of the plaintiff than a prima
facie showing of jurisdiction.  Foster-Miller, 46 F.3d at 145-46
(explaining the "trio of standards, each corresponding to a level
of analysis, that might usefully be employed" in deciding a
motion to dismiss for lack of personal jurisdiction).  A court
may assert personal jurisdiction over a nonresident defendant in
a diversity of citizenship case only if the plaintiff establishes
both that:  (1) the forum state's long-arm statute confers
jurisdiction over the defendant, and (2) the defendant has
sufficient "minimum contacts" with the forum state to ensure that
the court's jurisdiction comports with the requirements of
constitutional due process.  Sawtelle, 70 F.3d at 1387; Kowalski
v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law, 787
F.2d 7, 8 (1st Cir. 1986).  I begin with the New Hampshire
jurisdiction statute.

   **1.  New Hampshire's Long-Arm Statute.**

   The applicable New Hampshire statute provides long-arm
jurisdiction over nonresident individual defendants as follows:

>    Any person who is not an inhabitant of this state who,
>    in person or through an agent, transacts any business
>    within this state, commits a tortious act within this

> state, or has the ownership, use, or possession of any
> real or personal property situated in this state
> submits himself, or his personal representative, to the
> jurisdiction of the courts of this state as to any
> cause of action arising from or growing out of the acts
> enumerated above.

N.H. Rev. Stat. Ann. 510:4, I (1983).  The New Hampshire Supreme Court construes the statute "to provide jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow."  Phelps v. Kingston, 130 N.H. 166, 171 (1987).

Litle submits the affidavit of August Blevins, one of Adeline's co-defendants, an owner of WCN, and the signatory of the agreement with Litle on behalf of WCN.  In his affidavit, Blevins states that Adeline has been the president and chief executive officer of WCN since the agreement was signed in September 1994, and was the person responsible for monitoring WCN's obligations under the agreement and for submitting the sales records by wire transfer from Florida to Litle in New Hampshire for processing.  Blevins's affidavit is sufficient to support a prima facie case that Adeline was transacting business in New Hampshire and may have been committing a tortious act

through his representations and involvement in WCN's business.[3] Accordingly, Litle has established that jurisdiction is authorized under the New Hampshire long-arm statute.

## 2. Constitutional Analysis:  Due Process

The Due Process Clause of the Fourteenth Amendment limits a state's power to assert personal jurisdiction over nonresident defendants.  Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1877)).  For the court to properly assert personal jurisdiction over an absent nonresident defendant, the defendant must have had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Helicopteros, 466 U.S. at 414 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); accord Burnham v. Superior Court of California, 495 U.S. 604, 618 (1990).  To satisfy this requirement, the

---

[3]  Adeline's argument that any activities were conducted by WCN and not by him personally is unavailing given the factual context of his actions.  According to Blevins's affidavit, Adeline was personally involved both in the operation of WCN and also in the specific transactions related to Litle.  Therefore, jurisdiction is based on his direct personal involvement not merely WCN's corporate activities.  See Villa Marina Yacht Sales v. Hatteras Yachts, 915 F.2d 7, 10 (1st Cir. 1990).

defendant's conduct should bear such a "substantial connection with the forum [s]tate" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (internal quotations omitted).

Due process may be satisfied through general or specific contacts providing jurisdiction over a defendant. Foster-Miller, Inc., 46 F.3d at 144. Litle argues that Adeline's contacts with New Hampshire satisfy the requirements of specific jurisdiction. Accordingly, Litle must make a prima facie case that Adeline's contacts meet the constitutional standard in three distinct components:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089; accord Sawtelle, 70 F.3d at 1388.

The first element, relatedness, requires an examination of Litle's claims against Adeline, misrepresentation and violation

8

of New Hampshire's fair business practices statute.  For both claims, Litle charges Adeline with misrepresenting WCN's intent to ship products to customers before transmitting the charges for processing to Litle, and instead, as a result of wrongful conduct, causing Litle to incur excessive chargebacks on WCN's account.  Blevins's unrefuted affidavit supports Litle's allegations by establishing that Adeline was the person at WCN responsible for monitoring WCN's obligations under its agreement with Litle and was also responsible for the submissions of sales transactions to Litle.  Because the actions that form the basis for Litle's claims against Adeline were directed at Litle's business activities in New Hampshire, the relatedness element is satisfied.

Second, Litle must show that Adeline's contacts with New Hampshire were purposeful rather than fortuitous.  Sawtelle, 70 F.3d at 1391.  The "purposeful availment" element itself consists of two parts:  (1) foreseeability--the defendant's "'contact and connection with the forum [s]tate [must be] such that he should reasonably anticipate being haled into court there,'" and (2) voluntariness--the defendant's contacts must be voluntary rather than the result of the "'unilateral activity of another party or a third person.'"  Ticketmaster-New York, Inc. v. Alioto, 26 F.3d

9

201, 207 (1st Cir. 1994) (first quoting <u>Worldwide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) second quoting <u>Burger King Corp.</u>, 471 U.S. at 475)).

Adeline's transactions with Litle in New Hampshire were pursuant to the Litle-WCN agreement. The agreement provides a choice of law clause at paragraph twenty-one stating that the agreement will be governed by and construed in accordance with New Hampshire law, and WCN agreed that jurisdiction for all actions to enforce agreement obligations would be in New Hampshire. Although Adeline was not a signatory to the agreement, according to Blevins's affidavit, Adeline was CEO and president of WCN when the agreement was signed and was responsible for transactions with Litle. Thus, Adeline presumably was aware of the likelihood of a suit in New Hampshire.

Litle alleges that Adeline made representations to it about WCN's performance under the agreement. The wire transfers and fax transmissions of sales charges, which allegedly were not in compliance with the agreement and which caused substantial loss to Litle, were aimed at Litle's business operation and were received and processed in New Hampshire. The alleged intent and the effect of the contacts were to injure Litle in New Hampshire.

10

Thus, Adeline could reasonably anticipate that problems arising under the agreement and as a result of misrepresentation to Litle in New Hampshire would be adjudicated in New Hampshire, and he acted voluntarily under the terms of the agreement.

Finally, the five Gestalt factors support this court's assertion of personal jurisdiction over Adeline:

> '(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.'

Foster-Miller, 46 F.3d at 150 (quoting United Elec. Workers, 960 F.2d at 1088). Despite the obvious inconvenience to Adeline to defend himself in a suit in New Hampshire, the weight of the Gestalt factors tips the balance in favor of asserting jurisdiction here. It is most convenient for Litle to adjudicate the dispute in the state where the business is located, and it is most efficient to continue the action already begun here, particularly because it involves defendants Blevins and WCN as well as Adeline. Also, New Hampshire has an interest in resolving a dispute concerning an alleged harm to a New Hampshire business that occurred in New Hampshire.

In sum, it is reasonable and constitutionally fair to assert

11

personal jurisdiction over Adeline in New Hampshire.
Accordingly, his motion to dismiss on jurisdictional grounds is
denied.

## B.    Sufficiency of the Pleadings of Fraud

Adeline moves to dismiss count three, the misrepresentation
claim, on the grounds that Litle has failed to state a cause of
action because the allegations of fraud do not satisfy the
particularity requirement of Rule 9(b).[4]  A motion to dismiss for
failure to state a claim, pursuant to Federal Rule of Civil
Procedure 12(b)(6), requires the court to review the allegations
of the complaint in the light most favorable to the plaintiff,
accepting all material allegations as true, with dismissal
granted only if no set of facts entitles plaintiff to relief.
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson,
355 U.S. 41, 45-46 (1957).

In the context of a motion to dismiss a claim of fraud or
misrepresentation, however, the claim must also meet the special
pleading requirements of Federal Rule of Civil Procedure 9(b).

---

[4]  I do not construe Adeline's motion to challenge the
sufficiency of the complaint as to the legal elements of a fraud
claim under New Hampshire law.  Also, Adeline addresses only the
claim for misrepresentation, not Litle's claim of violations of
New Hampshire's unfair trade practices statute.

12

Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991); Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (in diversity actions, although state law governs proof of fraud at trial, procedure for pleading fraud is governed by Rule 9). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." While the term "fraud" need not appear in the complaint, Rule 9(b) requires that the circumstances indicating fraud be stated with particularity. See Simcox v. San Juan Shipyard, Inc., 754 F.2d 430, 439 (1st Cir. 1985).

The purpose of Rule 9(b)'s particularity requirement is "to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim [sic]." Hayduk, 775 F.2d at 443 (emphasis added). To fulfill Rule 9(b)'s purpose, the plaintiff must specify "particular times, dates, places or other details of the alleged fraudulent involvement of the actors." Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 361 (1st Cir. 1994); accord Hayduk, 775 F.2d at 444 (conclusory allegations of fraud insufficient even if repeated several times). Further, the complaint must "set forth specific facts that make it reasonable

13

to believe that defendants knew that a statement was materially false or misleading" when it was made.  <u>Lucia v. Prospect St. High Income Portfolio, Inc.</u>, 36 F.3d 170, 174 (1st Cir. 1994) (quoting <u>Serabian</u>, 24 F.3d at 361).

The bulk of the misrepresentation allegations in the complaint target WCN rather than Adeline.  The gist of the allegations is that WCN agreed to ship products ordered by its customers before transmitting the sales charges for processing to Litle, but instead sent Litle the charges, which Litle credited to WCN, without ever sending the products to the customers.  The result, Litle contends, was that WCN amassed an excessively large debt due to chargebacks from sales credited to WCN, but cancelled by customers, who did not receive the ordered products.  The allegations in the complaint[5] that Litle relies on to satisfy its pleading obligation are as follows:

> 8.  On or about September 9, 1994, Litle entered into a written agreement ("Member Agreement") with [WCN] pursuant to which Litle agreed to process [WCN]'s credit card transactions in exchange for certain fees. A true and accurate copy of the Member Agreement is

---

[5]  Unlike a motion to dismiss for lack of personal jurisdiction brought under Federal Rule of Civil Procedure 12(b)(2), a motion to dismiss pursuant to Rule 12(b)(6) focuses on the sufficiency of the pleading without reference to outside facts or proof.

14

attached hereto as Exhibit A and is incorporated herein by reference. [WCN] and its officers represented to Litle that they would be operating a home shopping television network and soliciting credit card purchases by telephone.

15. On or about December 19, 1994, Litle became aware of significant irregularities in the [WCN] account, including but not limited to an excessive number of chargebacks involving transactions processed by WCN.

16. At this time, Litle also became aware of complaints that customers of [WCN] were being charged for merchandise that had never been shipped by [WCN]. [WCN] and Adeline again represented to Litle that this was not the case.

23. Throughout the time of the activities described above, from the signing of the Member Agreement to the present, Blevins and Adeline have been aware of and personally involved in the acts of [WCN]. Upon information and belief, Blevins and Adeline are active in the business of [WCN] and act as the Chief Executive Officer and President of [WCN], respectively.

38. The representations made by Blevins, Adeline, [WCN], and [WCN]'s agents, servants and employees, concerning their promise not to submit charges to Litle for credit transactions until the time they shipped the products involved in those transactions were false when made.

39. Blevins, Adeline, and [WCN] knew that these representations were false.

The First Circuit has not held, as have other circuits, that the requirements of Rule 9(b) are less stringent with respect to fraud claims against corporate officers who have allegedly engaged in collective action on behalf of the corporation. See,

15

e.g., In re Glenfed, Inc. Securities Litigation, 60 F.3d 591, 592 (9th Cir. 1995) ("A plaintiff may satisfy Fed. R. Civ. P. 9(b) through reliance upon a presumption that the allegedly false and misleading group published information complained of is the collective action of officers and directors." (quotations omitted)); F.D.I.C. v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994) (corporate fraud doctrine may not apply when plaintiff alleges individual fraud by defendants and, in any case, "plaintiffs must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." (quotation omitted)); see also Arenson v. Whitehall Convalescent and Nursing Home, Inc., 880 F. Supp. 1202, 1207 (N.D. Ill. 1995). Nor does the circuit provide a relaxed standard when specific facts relate "'to matters peculiarly within the knowledge of the opposing party.'" Hayduk, 775 F.2d at 444 (quoting Wayne Investment, Inc. v. Gulf Oil Corp., 739 F.2d 11, 13-14 (1st Cir. 1984)). Therefore, in this circuit, a plaintiff must allege claims of fraud against each individual defendant with particularity. See Goebel v. Schmid Bros., Inc., 871 F. Supp. 68, 73 (D. Mass. 1994). Litle's allegations do not provide sufficient detail about Adeline's individual actions to meet the

16

Rule 9(b) standard.

Litle has asked for an opportunity to amend its complaint to meet the particularity requirement of Rule 9(b) if I were "inclined" to grant Adeline's motion. Therefore, rather than dismiss the misrepresentation claim, I grant Litle's request to amend its complaint to provide greater detail as to the misrepresentation allegations against Adeline. I deny Adeline's motion to dismiss without prejudice to his right to raise the same issue if Litle fails to amend within a reasonable time.

## III.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss, (document no. 9) is denied, and plaintiff's request to amend is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

February 26, 1996

cc:  Donald Williamson, Esq.
     Richard Adeline, Esq.
     Rupert Leeming, Esq.

17