Dante Alighieri Society, a Pennsylvania Corporation v. Commissioner.
Dante Alighieri Soc. v. Commissioner
Docket No. 635-62.
United States Tax Court
T.C. Memo 1964-251; 1964 Tax Ct. Memo LEXIS 87; 23 T.C.M. (CCH) 1509; T.C.M. (RIA) 64251; September 24, 1964
B. Albert Bertocchi, Crossett Bldg., Kittanning, Pa., for the petitioner. Lawrence L. Wilson for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: Respondent determined a deficiency in petitioner's income tax liability for the year 1957 in the amount of $1,202.82. This deficiency results from respondent's disallowance of a deduction claimed by petitioner in that year in the amount of $1,174 on account of sick and death benefits paid in 1957 and the disallowance of a net operating loss carryover from the years 1955 and 1956 in the amount of $2,835.35. The net operating loss carryover disallowed resulted from the deductions by petitioner in those years of payments of sickness, accident, and death benefits in amounts exceeding the net operating losses shown on petitioner's income tax returns *88 for those years. Accordingly, the question presented herein is whether petitioner is entitled to deductions on account of sickness, accident, and death benefits paid by it. The parties have filed herein a stipulation of facts and a later supplemental stipulation of facts. We find the facts to be as stipulated and incorporate herein by this reference the stipulations and the exhibits attached thereto. Those facts necessary to an understanding of the problem presented may be set out as follows: Petitioner was incorporated in 1927 under the laws of Pennsylvania pertaining to corporations organized not for profit. It has never issued any stock. Its principal office is located in a building which it owns in Kittanning, Pennsylvania. It is an independent organization having no parent organization or affiliation with any other organization. Beginning in 1948 it has filed its Federal income tax returns with the district director of internal revenue at Pittsburgh, Pennsylvania. Petitioner is governed in accordance with the bylaws of the Dante Alighieri Mutual Benefit Society. As stated in the preamble contained in the bylaws, the purpose of petitioner generally is to unite into one associative *89 entity persons of Italian origin and descent in order to promote their individual and collective well-being, to promote friendship, to render assistance in case of need, and to inspire the youth to seek recognition among other races in the United States. Regular members of petitioner are generally limited to males between the ages of 18 and 50 years of Italian extraction who are certified to be of sound physical and mental health at the time of their election to membership. Regular members pay dues of $12 per year. During the years 1955, 1956, and 1957 petitioner had 154, 156, and 161 regular members, respectively. Any person over the age of 21 and regardless of nationality can become a social member of petitioner upon recommendation of two members and approval by the majority of the members. A social member pays dues of $2 per year but has no voting privileges and cannot occupy an administrative office. A social member is entitled to no financial benefits but has the privilege of using the facilities of petitioner for entertainment and recreation. During the years 1955, 1956, and 1957 petitioner had 480, 477, and 285 social members, respectively. Generally, a regular member *90 whose dues and assessments are paid and who has been a member of petitioner for at least 3 months is entitled to receive $1 per day in case of a sickness or an accident which renders him incapable of performing his occupational tasks. Generally, payments may not continue for a period longer than 6 months after the sickness or injury. During the year 1957 petitioner paid $874 to regular members for sickness and accident benefits and claimed such amount as a deduction for "Sick Benefits" on its Federal income tax return for the year 1957. The provisions of the bylaws pertaining to the payment of sickness and accident benefits were deleted in 1962. Upon the death of a regular member the family or widow or other designated beneficiary of such member is entitled to a lump sum death benefit in the amount of $300. Upon the death of a regular member the bylaws provide that regular members may be assessed certain amounts. However, for the year 1957 and for years prior thereto no such assessments were made. During the year 1957 petitioner paid $300 as death benefits and claimed such amount as a deduction for "Death Benefits" on its Federal income tax return for the year 1957. The provisions *91 of the bylaws pertaining to the payment of death benefits were deleted in 1962. For the year 1957 and for years prior thereto petitioner had a club liquor license, granted by the Pennsylvania Liquor Control Board, permitting petitioner to sell alcoholic beverages to members, both regular and social, and their guests. Petitioner operated a bar on the premises which was opened to such persons each day of the week from 6 p.m. to midnight and from 1 p.m. to 2 a.m. on Saturday and Sunday. Petitioner employed a bartender and waitress to service the members and their guests, with additional help being secured for weekends. Petitioner also sold sandwiches, soft drinks, and other miscellaneous food items to its members and guests. In addition, petitioner's facilities included a dance floor where dances were held periodically for all members and their guests; a television room; and a card-playing lounge which included a pool table and amusement devices consisting of a miniature coinoperated bowling alley and pinball machines. All of these facilities were available to all members and their guests. In its return for 1955 petitioner reported the receipt of the following items of income: Gross profit from sales
$9,850.79
Interest on loans, notes, mortgages,
bonds, bank deposits, etc.
144.91
Rents
$ 550.00
Dues
3,888.00
Amusement machines
729.00
Fire loss proceeds
66.46
*92 In the same return petitioner took the following deductions: Compensation of officers
$ 492.00
Salaries and wages
6,783.49
Repairs
809.20
Taxes
440.85
Depreciation
2,045.20
Other deductions
5,699.27 Included in the last deduction "Other deductions" were death benefits in the sum of $1,800 and sick benefits in the sum of $1,123. In its return for 1956 petitioner reported the receipt of the following items of income: Gross profit from sales
$10,295.20
Interest on loans, notes, mortgages,
bonds, bank deposits, etc.
173.58
Rents
225.00
Dues
3,357.00
Amusement machines
1,566.00
Insurance claims and refunds
144.93
In the same return petitioner took the following deductions: Compensation of officers
$ 797.00
Salaries and wages
6,896.32
Repairs
360.31
Taxes
474.54
Depreciation
1,717.52
Advertising
27.44
Other deductions
5,520.08 Included in the last deduction "Other deductions" were death benefits in the sum of $600 and sick benefits in the sum of $1,932. In its return for 1957 petitioner reported the receipt of the following items of income: Gross profit from sales
$13,895.24
Interest on loans, notes, mortgages,
bonds, bank deposits, etc.
309.29
Dues
2,641.00
Amusement machines
1,876.00
*93 In the same return petitioner took the following deductions: Compensation of officers
$ 852.00
Salaries and wages
7,603.66
Repairs
361.87
Taxes
696.20
Contributions or gifts paid
149.74 Although page 3 of the exhibit consisting of a photostatic copy of petitioner's return for 1957 is missing, it is apparent from schedules attached to the exhibit that petitioner also deducted as "Other deductions" the sum of $4,421.98 which included death benefits in the sum of $300 and sick benefits in the sum of $874, and that petitioner deducted as a loss carryover from 1955 and 1956 the sum of $2,835.35. All receipts from dues, assessments, food and beverage sales, amusement devices, and miscellaneous income are placed in a single account from which all expenditures are made, including any financial benefits paid to regular members. From July 3, 1944, until April 16, 1946, petitioner was, by ruling, exempt from Federal income taxation under section 101(8) of the Internal Revenue Code of 1939. Petitioner's exemption from Federal income taxation was revoked by a ruling of April 16, 1946, which was reaffirmed by letters dated March 24, 1950, and November 30, 1950. This *94 action is not questioned herein by petitioner. Respondent contends that the sole trade or business of petitioner during the years here involved was the operation of a club for the pleasure of its members and guests. Predicated on this contention he argues that the payments of sickness and death benefits by petitioner are not ordinary and necessary expenses of carrying on its trade or business within the meaning of section 162 of the Internal Revenue Code of 1954. We are unable to agree with the predicate of respondent's argument. In our opinion one of the important purposes of petitioner's organization and operation was to establish a mutual benefit society for the benefit of its regular members. To accomplish that purpose those members paid dues in considerable sums which were included in petitioner's taxable income. From the record we may compute the total amount of such dues received during the years before us from the regular members who were entitled to potential death and sickness benefits as being $5,652. The total amount of benefits paid during those years was $6,629. The average number of its regular members paying dues entitling them to such benefits *95 during the years here involved was 157 as compared with the average number of 404 social members not entitled to such benefits. It is impossible for us to dismiss the business activities of petitioner incident to its mutual benefit functions as negligible and to be disregarded as de minimis. In these days of widely distributed economic prosperity and of economic security it is somewhat difficult to realize the important role played in the 1920's (when petitioner was organized) by small mutual benefit societies in providing a degree of economic security to wage earners, especially those who were recent immigrants, by providing for small benefits to their members in cases of sickness and death. We have no doubt that this was one of the primary purposes for which petitioner was organized and operated for many years. It may well be that during later years the social aspects of petitioner's activities have come to be of greater importance but the record here establishes to our satisfaction that petitioner's business activities during the years before us relating to the collection of "dues" from its regular members and the payment of sickness and death benefits to them continued to be *96 so substantial as to preclude a finding that the sole business of petitioner was the operation of a club for the pleasure of its members and their guests. Obviously, the larger part of the "dues" paid to petitioner by its regular members was in consideration for their right to sickness and death benefits. These dues were properly considered to be a part of petitioner's taxable gross income. Unless petitioner is permitted to deduct the amounts of benefits paid out, it will in effect be paying, at least in part, a gross receipts tax, which, of course, is not ordinarily contemplated by the Federal income tax statutes. It appears to have been the practice of respondent in similar cases to permit such deductions. See Fraternal Order of Civitans of America, 19 T.C. 240, in which a determination was made of the taxpayer's net income in amounts not contested by the taxpayer. See also Philadelphia & Reading Relief Association, 4 B.T.A. 713, 722. Respondent relies on a statement in Polish Army Veterans Post 147, 24 T.C. 891, 898, [1] made by us without discussion and without the citation of authority to the effect that sick benefits paid by the taxpayer *97 in that case were not deductible expenses. In the cited case the average number of the active members of the taxpayer who might be eligible for benefit payments during the years there involved was 38, while the average number of the social members (not entitled to benefits) was 456 and the average amount of "dues" received annually which were available for the payment of benefits was $14.60 while the average amount of benefits paid annually was $526.73. In that case it was obvious that "[the] amount of benefits paid depended to a large extent upon the amount of income received from the operation of the bar." In the instant case it appears that petitioner's receipts over the 3 years before us included $5,652 in "dues" from regular members and $627.78 as interest, a total of only a few hundred dollars less than the total amount paid as benefits during those years. Under the circumstances present in the cited case the conclusion could be made that the taxpayer's sole business was the operation of a bar and that its business activities relating to mutual benefit were negligible and should be disregarded. In the instant case such a conclusion is not supported by the record. *98 Decision will be entered for the petitioner. Footnotes
1. Vacated and remanded, 236 F. 2d 509↩, for reconsideration of computation of tax. The taxpayers did not further prosecute.