JUNIPER HUNTING CLUB, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40706. Promulgated June 23, 1933.

*Donald V. Hunter, Esq.*, for the petitioner.
*Dean P. Kimball, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $9,950.14 in the petitioner's income tax for the fiscal year ended February 28, 1926. The petitioner contends that the Commissioner committed two errors:

(1) He failed to hold that the petitioner is exempt from tax under section 231 (9) of the Revenue Act of 1926 on the profit from the sale of real estate.

(2) He failed to reduce the profit from the sale by a broker's commission of $20,117.90 and revenue stamps in the amount of $402.

The parties filed a stipulation as follows:

The Juniper Hunting Club is an organization which was incorporated on July 15, 1909, under the laws of the State of Kentucky.

The purposes for which the corporation was chartered were to maintain a social club, to acquire, establish, and maintain for the use and benefit of its members, in fee simple or otherwise, such lands for hunting and fishing privileges, within or without the State of Kentucky, as its members should authorize, with the power to make contracts, sell, convey, mortgage, transfer or assign any property or rights as acquired, to reinvest the proceeds of such sales or transfers, in whole or in part, for the same or similar purposes at the discretion of the members of the corporation. The corporation was not to be conducted for gain or profit, and had no capital stock.

The corporation, as originally chartered, was restricted to thirty-five members, and by an amendment of its charter on September 29, 1915, the authorized membership was changed to fifty memberships of two classes, to wit, corporate memberships, limited to thirty such memberships, and associate memberships, limited to twenty in number. Under the foregoing amended charter, only corporate memberships acquired any interest in Club property. By a further amendment to the corporate charter on June 7, 1924, the membership in the Club was limited to forty-three members and units of interest in the Club were provided for. Each member was required to own at least five hundred units of interest, and each member was limited in ownership to not to exceed 4,000 units of interest. The total number of authorized units was sixty thousand. These units were transferable only to duly elected members of the Club or to the Club itself.

The Club was maintained by dues and assessments paid by its members.

In 1909, the Juniper Hunting Club purchased a tract of 18,289 acres of land in Marion and Lake Counties in the State of Florida, to be used as a hunting and fishing preserve. The cost to the Club of this tract was $31,500. The Club subsequently acquired 300 additional acres of adjoining land for Club purposes.

On or about August 22, 1925, the Club made a sale of the 18,289 acres of its Florida land, mentioned above, retaining out of its Florida holdings only the 300 acres mentioned above, upon which its clubhouse was located. The sale price agreed upon was $22 per acre, or a total sale price of $402,358. Payment was to be made as follows: One fifth of the purchase price at the time of the sale and the remainder in four equal annual installments represented by four notes, each in the amount of $80,471.60.

In August of the year 1925, the Club received the first installment under its sale of the land, to wit, $80,471.60. A commission of $20,117.90 was paid by the Club for this sale and $402 was expended for revenue stamps upon the deed.

Out of the installment received by the Club, the sum of $48,353 was paid in September 1925, to the members of the Club, or to the representatives of deceased members, and $11,598.70 was retained for Club purposes.

The March 1, 1913, value of the 18,289 acres, including the timber thereon, was $55,232.88.

In 1917, timber was sold from the property which produced a net return to the Club of $37,768.25.

The petitioner, in its return, computed its gain on the installment basis and the respondent has determined that the petitioner realized a profit, in the fiscal year ended February 28, 1926, of $76,052 on account of the sale of the Florida lands, which is arrived at as follows:

| | | |
|---|---:|---:|
| March 1, 1913 value of land sold in 1925 | | $55,232.88 |
| Deduct: | | |
|     Timber sold in 1917 | $40,000.00 | |
| Less: | | |
|     Expense of sale | 2,231.75 | |
| Proceeds of sale of timber | | 37,768.25 |
| Balance | | 17,464.63 |
| Add: | | |
|     Improvements subsequent to March 1, 1913: | | |
|         Labor and material for fencing | $2,732.37 | |
|         Signs | 100.00 | |
|         Two Gates | 25.00 | |
|         Road to Wild Cat Lake | 204.00 | |
|         Planting fish and duck food | 1,572.00 | |
| | | 4,633.37 |
| Cost of land sold in 1925 | | 22,098.00 |
| Sale price | | $402,358.00 |
| Cost of land sold | | 22,098.00 |
| Net profit to be realized | | 380,260.00 |

| | |
|---|---:|
| Payment made August 22, 1925 | $80,471.60 |
| Note due August 22, 1926 | 80,471.60 |
| Note due August 22, 1927 | 80,471.60 |
| Note due August 22, 1928 | 80,471.60 |
| Note due August 22, 1929 | 80,471.60 |
| Total sales price | 402,358.00 |
| Percentage of profit to total sales price $380,260 divided by $402,358 equals | .9450787 |
| Profit realized during taxable year (80,471.60×.9450787) | $76,052.00 |

No deductions or adjustments other than those shown above in this paragraph were allowed to the petitioner, the deficiency being based upon a claimed net income of $76,052.

The return for the fiscal year ended February 28, 1926, was filed with the collector of internal revenue for the district of Kentucky.

The petitioner also offered the testimony of several witnesses. Much of their testimony relates to an issue no longer pressed. They testified, however, that the petitioner was incorporated under a law of Kentucky relating to religious, charitable, and social organizations not to be conducted for profit, it had no regular revenue-producing activities and never sold privileges, but once sold some timber, several times sold some fruit, and once grazed cattle and hogs on its property in order to reduce carrying charges. None of the money thus derived was paid to members. The sale in 1925 was made to take advantage of the attractive offer received during the Florida real estate boom, to avoid real property taxes on the expected increase in the assessed value of the land, and because the land was a game preserve which was then too valuable to be kept for that purpose and it was not needed as much as it had been needed formerly. There was no intention of discontinuing the Club. The purchaser defaulted on the next installment and the petitioner subsequently reacquired the property sold.

Section 231 provides:

The following organizations shall be exempt from taxation under this title—

\*    \*    \*    \*    \*    \*    \*

(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

Article 520 of Regulations 69, relating to this provision, is as follows:

*Social clubs.*—The exemption granted by paragraph (9) of section 231 applies to practically all social and recreation clubs which are supported by membership fees, dues, and assessments. If a club, by reason of the comprehensive powers granted in its charter, engages in traffic, in agriculture or horticulture, or in the sale of real estate, timber, etc., for profit, such club is not organized and operated exclusively for pleasure, recreation, or social purposes, and any profit realized from such activities is subject to tax.

The statute and the regulations above quoted are identical in this respect with previous statutes and regulations. The implication is that Congress approved of the interpretation adopted by the Commissioner. The petitioner did not *engage* in the sale of real estate as a regular business but made only this isolated sale and it therefore contends that under the statute and the regulations it is exempt from tax on its profit.

Tax liability is determined upon an annual basis. The petitioner was not organized for profitable purposes. But during the year before us it not only engaged in a sale of real estate for a profit, but part of that profit was distributed in cash to the benefit of private shareholders. During this year the club was not " operated exclusively for pleasure, recreation, and other nonprofitable purposes." Nor did " no part of the net earnings " of the Club inure " to the benefit of any private shareholder." This sale was a violent departure from the regular activities of the Club. It was not a mere incident to the regular functions of the Club as were the sales of wine, chocolate and other articles referred to in *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U.S. 578. Financial gain was the principal end to which the sale of the land was directed. The petitioner was not tax exempt on the profit from this sale.

It chose to report the profit on the installment plan. Neither party seeks to change from the method selected. Under that method the profit to be realized is first determined by deducting from the sales price, the basis and all expenses of the sale. A proportionate part of each payment is then reported as profit. The broker's commission and the stamps were a part of the expenses of the sale. These two items are not deductible in their entirety in the year of sale. They should have been deducted in computing the profit to be realized. The proportionate part of the profit to be reported in the year before us must be recomputed.

*Decision will be entered under Rule 50.*