**JOCKEY CLUB v. HELVERING, Commissioner of Internal Revenue.**

**No. 249.**

Circuit Court of Appeals, Second Circuit.

Argued March 19, 1935.

Decided April 1, 1935.

J. Sterling Halstead, Harold C. McCollom, and Joseph S. Auerbach, all of New York City (Henry L. Pierson, of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch and A. F. Prescott, Sp. Assts. to the Atty. Gen., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

We do not think that the petitioner was a "scientific" corporation within section 231

(6) of the Act of 1926, 26 USCA § 982 (6), and section 103 (6) of the Act of 1928, 26 USCA § 2103 (6), though in a loose sense it might be possible to find a scientific aspect to some of its activities. It was in part a horse breeder, maintaining an experimental breeding station and a breeding bureau; and it is quite true that until relatively modern times such knowledge of heredity as we had was derived from those who bred domestic animals. It would be hard to deny the name of science to their lore. But though additions to the stock of knowledge may come out of these activities of the club, it was certainly not "exclusively" scientific; in the main it was organized to protect and enjoy the sport of horse racing, to keep out dishonorable practices, to establish the standards of gentlemen sportsmen. Those purposes are laudable, but they are far afield from science.

A more troublesome question arises as to subdivision 9 of the sections just cited, 26 USCA § 982 (9), and § 2103 (9), which in substance exempts all clubs whose earnings do not inure to the benefit of members. This does not of course mean that a club may on no occasion make a profit without losing its exemption, but it does mean that the returns from transactions with outsiders, taken by and large, shall be no more than a reimbursement of their cost to the club; shall not be a source of income. If it turns out upon computation that they are such a source over a substantial enough period to justify the conclusion that this is deliberate, we agree with the Board that the club is making earnings which "inure to the benefit" of the members, though they are not distributed. Tested by this rule the taxpayer at bar fails. It is true that its gross income, less its dues, was less than its total expenses in four of the six years about which the record informs us; but that does not advance us to a conclusion. What we need is a comparison between the income from the outside activities of the club, and their cost. No such comparison is possible. We do know the "total operating income," from which are excluded interest on investments, capital profits, and dues. For the six years this income averaged a little less than $80,000 annually. The average "operating" expenses for the same period were about $85,000, and if we could assume that they represented only the cost of those services to, or privileges of, nonmembers from which the "operating" income came, we should be on sure ground. We cannot. In a few

cases, it is true, we can allocate the items in the "breakdown," but for the most part they are undistributed between transactions with outsiders and the club's intramural business, so to speak. Salaries and rent are instances. Probably it would be impossible to make any allocation; but whether it would be or not, on this record it seems to us that the Board was right.

Order affirmed.