## SCOFIELD v. CORPUS CHRISTI GOLF & COUNTRY CLUB.

### No. 10098.

Circuit Court of Appeals, Fifth Circuit.

April 16, 1942.

Newton K. Fox and J. Louis Monarch, Sp. Asst. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Ben F. Foster, U. S. Atty., of San Antonio, Tex., for appellant.

Jas. B. Hubbard, of Corpus Christi, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for tax refund. The claim was that plaintiff, within Section 101, Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 101, was a Club "organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the ben-

efit of any private shareholder." The defense was that, in the year in question, the Club executed an oil lease upon its club property, for a consideration of a cash bonus, reserved oil payments and a royalty and in that year received, $11,554.46, $7,-500 as bonus, and $4,004.44 as royalty, and therefore was not, within the exemption, being operated exclusively for pleasure, recreation and other non-profitable purposes. On stipulated facts,[1] showing that the operations conducted by the Club continued to be the same before as after the lease, that all operations under the lease were conducted by the lessee, none by the Club, and that not a dollar of the net earning inured to the benefit of any private shareholder, the district judge found for plaintiff and gave judgment accordingly.

The Commissioner upon the authority of West Side Tennis Club v. Com'r, 2 Cir., 111 F.2d 6, 130 A.L.R. 103; Jockey Club v. Helvering, 2 Cir., 76 F.2d 597 is here insisting that the case was wrongly decided and should be reversed. We do not

[1] Plaintiff is a club which was organized, and, unless the giving of the oil lease and the receipt of monies therefrom requires a different conclusion, has been operated exclusively for pleasure, recreation and other non-profitable purposes, and no part of its net earnings have inured to the benefit of any private shareholder. The club property in the year 1936, contained 82 acres of land upon which was a nine hole golf course and a clubhouse. This property had been bought in March, 1922, in four deeds, each of which reserved to the grantor, a 1/12th interest in the oil, gas and mineral rights in and under the lands. By 1936 small producing oil and gas wells had been brought in close to the club's property on three sides and within offset distance on two sides, and the club's vendors demanded development so that they might realize on their 1/12th reserved interest. Plaintiff was advised by its attorney that it must either develop the property for oil, buy out its vendor's mineral rights or permit the vendors to develop the property. Plaintiff elected to lease to the Taylor Refining Company for a cash bonus of $7,500, an oil payment of $60,000 out of a certain part of the oil, and a royalty. In order to protect the golf course as much as possible from the operations of the lessee, the lease provided: that the drilling should be confined to the rough without encroaching upon the fairways and upon completion of each well the lessee was to restore the landscape around the well as nearly as possible to the state it was in when the well was commenced. A further provision of the lease was, "if it becomes necessary to cross fairways in drilling operations, lessee obligates itself to protect such fairways by what is commonly known as corduroy roads or their equivalent, so that such fairways will not be torn up during drilling or other operations. Notwithstanding these precautions the golf course was and is damaged by the presence of large tanks, separators, derricks, Christmas trees, reservoirs and the usual appurtenances necessary in oil fields and the presence of such equipment on the golf course affected the playing of golf and the normal use of the property in that such equipment constitute obstructions, etc. In the year 1936, the total revenue of plaintiff, other than from oil was $13,558.17, and the total revenue from oil was $11,554.-44. The total expense of operation was $11,472.36. No dividends have been declared by the plaintiff. The dues have not been reduced since the making of the oil lease but the dues of $60.00 per year prior to the lease, were increased in 1941, to $96.00 per year. A total of four wells were drilled on the property. Two are now producing but decreasing steadily, the other two have been abandoned. Up to December 31, 1940, plaintiff received as total income from the lease $45,575.48, of which $23,000 has come from the $60,000 in oil payment, the balance from royalties and the original bonus.

454

think so. Both of those cases were decided as they were because as the court pointed out, while the clubs in question were organized for non-profitable purposes, they were not so operated. In each of those cases the club was actively engaged in operating non club activities, the business of public amusement or entertainment, from which it derived from the public generally, and not merely from its members, large revenues. In the Jockey Club case, where receipts and expenses were $80,000 to $85,000, the court said "what we need is a comparison between the outside activities of the club and their costs, but no such comparison is possible." In the Tennis Club case, the club had expended a great deal of money to erect a stadium to accommodate the public and during the taxable year, the club had taken in large sums from the public. Here, the club had nothing to do with the operation of the oil wells. The money that it got from the lease and the operations of its lessee, was merely an incident to the ownership of the land and no more converted the club into a corporation operating for profit, than it would have been converted if it had sold part of the lands outright as the Santee Club [2] did, or if it had only gotten a large bonus for an unproductive lease, as in the Koon Kreek Klub [3] case, and no royalty.

■ The statute expressly gives the exemption to clubs operated as this one was and as long as the exemption holds, all revenues, of the club without regard to their source, are exempt from tax, because under the statute it is the nature and character of the operations of the club and the use made of the revenues, and not their source, which determines the exemptions. The judgment was right. It is affirmed.

SIBLEY, Circuit Judge (dissenting).

In Santee Club v. White, 1 Cir., 87 F. 2d 5, a portion of the club's property not usable for club purposes was sold off at a profit, but the club was operated as before. In Koon Kreek Klub v. Thomas, 5 Cir., 108 F.2d 616, an oil lease was made for a bonus paid, but no oil well was ever drilled or operated. Here the club made a lease covering the whole of the club's lands, and in addition to a bonus, is receiving large sums continuously from oil payments and royalties, directly from the operation of oil wells on its golf courses.

Receipts from this source in the tax year, and each year since have about doubled the club's income. Whatever the local view under Texas law, under the federal tax laws what is received from oil payments is not mere purchase money for oil sold, but is the enjoyment of the mineral right in the land, for the exhaustion of which a depletion allowance is to be had. Dearing v. Commissioner, 5 Cir., 102 F.2d 91. This is even more clearly true of royalties. This club has elected thus to use its properties in addition to the ordinary club uses. It is operating for oil, as well as for golf. That it does not pump the wells itself is immaterial. It shares continuously in what the wells produce. So long as this goes on, I think it is not a club "* * * *operated exclusively* for pleasure, recreation, and other *nonprofitable* purposes."