**POLISH ARMY VETERANS POST 147,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**POLISH ARMY VETERANS POST 147 HOME ASSOCIATION,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

Nos. 11815, 11816.

United States Court of Appeals
Third Circuit.

Argued May 22, 1956.

Decided Sept. 17, 1956.

510

John M. Dudrick, Wilkes-Barre, Pa., for petitioners.

Helen A. Buckley, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, Attys.,

Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These two related corporations appeal the determinations of the Commissioner, affirmed by the Tax Court at 24 T.C. 891, denying exemptions from income tax, claimed under Section 101(3) and (9) of the Internal Revenue Code of 1939, 26 U.S.C. § 101(3, 9).[1] Neither of them filed an income or excess profits tax return for any of the taxable years involved, 1945 through 1950.

The Post petitioner was and is a member post of the Polish Army Veterans Association of America, Inc. The latter's active membership consists of ex-soldiers of the Polish Armed Forces who served during World War I or II and the children of members if they served in the armed forces of any of the Western Allies. Honorary members are also permitted. The constitution of the Association provides for rendering financial aid to sick and infirm ex-soldiers of the Polish Army and their families; war invalids have first priority for aid and then come active members. The by-laws, in addition, cover specified death benefits. In 1949, the Commissioner ruled the parent Association exempt under Section 101(8).[2]

The Post was admitted to the Association in 1934. In its constitution it stated that its purposes are:

" * * * To maintain in an association or club for the mutual benefit, advantage and enjoyment of its members, by means of legitimate entertainments and social gatherings; to promote, foster and encourage the interests, welfare and improvement of all ex-servicemen and women, and their auxiliaries; * * * "

The constitution called for three types of members; active, honorary and associate or social. The latter paid yearly dues of one dollar. The active members' dues were four dollars plus and the Post paid over most of the money so collected to the Association. During the critical years the Post operated a bar in its club rooms; its principal source of income. In that period it paid out small sums in sick, disability and death benefits and for funeral expenses of active members. The Tax Court found as a fact that the amounts of the benefits depended largely upon the receipts from the bar operation.

The Post's third class of members (social) is peculiar to it. The parent Association has no such group. The social members are not eligible to hold office. They were not paid any of the mentioned benefits nor did they receive, as active members did, similar payments from the Association. The reason for taking in this group was to obtain much needed help for the Post in an effort to continue its existence.

1. "§ 101. Exemptions from tax on corporations

" * * * the following organizations shall be exempt from taxation under this chapter—

* * * * * *

"(3) Fraternal beneficiary societies, orders, or associations, (A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system; and (B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents;

* * * * * *

"(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder".

2. Section 101(8) of the Internal Revenue Code of 1939 reads:

"Civil leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes".

The second petitioner, the Home Association, was formed under the Pennsylvania Non Profit Corporation Law, January 30, 1945. The Post's active members became its sole members. The Home Association by-laws set out its aims as follows:

"(a) To maintain a Home which shall be a suitable meeting and recreational center for the benefit, advantage and enjoyment of its members;

"(b) To promote the welfare and interest of its members and of all ex-service men and women;

"(c) To aid, assist and advise in developing a more intelligent and serviceable citizenship."

The Home Association acquired a building in March 1945, which it rented to the Post, commencing August 1945, as a home, headquarters and club rooms. In 1947 it obtained two adjoining buildings which it rented to various members of the Post. Most of the Home Association income was derived from coin machines which it operated in the Post club rooms, and from rent paid by the Post and the tenants of the two said buildings. It received some donations, a few loans and sold building bonds. The loans and bonds were largely paid off by 1950.

The Tax Court found as a fact that neither petitioner was operated exclusively for pleasure, recreation or social purposes during the issue years.

■ From the facts the Tax Court was bound to disallow exemption to the Post under paragraph (3) of Section 101. The social members, solicited in good faith to bolster the finances of this organization of aging veterans, while they did materially aid by their dues payments and patronage, actually eliminated any chance the Post had for exemption as a fraternal beneficiary society. They comprised about ninety per cent of its membership. We can readily agree they were friends of the Post but they did not possess the statutory fraternal requisite which the active members

had. They were not made members of the Veterans Association in which, as we have seen, there was no place for their classification. They had no say in the management or control of the Post and were not entitled to sick or death benefits. Undoubtedly they were well disposed towards the organization, glad to help and to be admitted to the club rooms but those things standing alone were never intended by Section 101(3) to be sufficient to establish exemption as a fraternal beneficiary society. Philadelphia & Reading Ass'n v. Commissioner, 1926, 4 B.T.A. 713. The burden of course is on the taxpayer who must show compliance with the exact terms of the exception. The latter, a matter of legislative grace, is to be strictly construed.

■ If the contribution theory of the dues payment could be isolated, and if that were all this social membership meant, a radically different situation would be presented. The difficulty is that for their dollar those people were taken into the Post at least as far as the social activities of the club rooms were concerned. Outsiders were not so admitted except on the occasion of public gatherings. In that state of affairs, for the Post to qualify under the second requirement of paragraph (3), the payment of benefits to members, the social members would have to be included in those payments otherwise only a preferred few, the active members, would be receiving the benefits which the law demands are to be given to all if the purpose of the exemption is to be fulfilled. Fraternal Order of Civitans of America v. Commissioner, 1952, 19 T.C. 240, 244.

■ Section 101(9) is of no avail to the Post since part of the latter's net earnings inured to the gain of the active members. They received in benefit payments during the disputed years a total of $3,160.37. At the same time that part of their dues retained by the Post totaled $87.60. The payments of benefits to the active members was a primary objective of the Post. While this end is most

praiseworthy it is directly prohibited by that part of (9) which states that for the organization to be exempt as a social club it must operate " ' * * * exclusively for pleasure, recreation, and other nonprofitable purposes * * *.' " Allied Trades Club v. Commissioner, 3 Cir., 1956, 228 F.2d 906, 907. In addition, the payments to the small minority group of active members is contrary to the second part of (9) which provides that no part of the net earnings of the club shall inure to the benefit of any private stockholder.

 The Home Association was formed to acquire the Post headquarters building but there is no evidence that it functioned as a fraternal society. It paid no benefits to its members. It cannot be exempted from taxation under Section 101(3).

 It was operating for profit, realizing substantial income from rent of its premises and its adjoining property and from coin machines in the club rooms. As is apparent it was not, in the language of the statute, operating exclusively for non-profitable purposes and is not excused from taxation because of Section 101(9).

 On the basic legal problems before us we have no doubt of the soundness of the Tax Court's decision. We are, however, greatly concerned as to the amount of the deficiencies and with the penalty inclusions. These may be hardship cases with justice requiring modification in the above respects. See Section 7482 of the Internal Revenue Code of 1954, 26 U.S.C. § 7482; Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. Of course on remand the Tax Court will have the same power as it had originally except as to the questions decided on this appeal.

Swenson v. Commissioner, 5 Cir., 1934, 69 F.2d 280.

 It is one justifiable inference that failure of petitioners to file returns stems from reliance upon the exemption of their parent Association. We realize that ignorance and honest belief are not enough to constitute reasonable cause and thus furnish a valid excuse for not filing. We do think that whether, under the circumstances, petitioners did exercise ordinary business care and prudence is for the Tax Court to pass on in connection with the problem of whether penalties are to be assessed against the petitioners.

 With reference to the amounts of the deficiencies, it is uncontradicted that petitioners did not consider depreciation. The record does not indicate that the Tax Court made any allowance for this item. We think it ought to be re-examined. At that time, under the particular circumstances, petitioners should be afforded the opportunity of showing specifically the alleged errors in the Commissioner's calculations. It should be noted that blanket assertions of the errors are of no assistance. Whether an experienced top grade accountant could properly recast petitioners' books so that their claims of ruinous overtaxation could be understood and evaluated, we do not know. It is entirely up to petitioners to make the effort. That sort of examination of their accounts and property could, at least, probably develop accurate necessary detail of the depreciation. It and whatever excuses petitioners have, if any, for not filing the returns must be clearly, fully and fairly submitted to the Tax Court.

For the purposes above outlined, the decisions of the Tax Court are vacated and the cases remanded to that court.