**UNITED STATES of America, Appellant,**

v.

**FORT WORTH CLUB OF FORT WORTH, TEXAS, Appellee.**

**No. 21090.**

United States Court of Appeals Fifth Circuit.

April 15, 1965.

Estes, District Judge, dissented.

---

Gilbert E. Andrews, Jr., Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., H. Barefoot Sanders, U. S. Atty., T. Gary Cole, Jr., Asst. U. S. Atty., Dallas, Tex., John B. Jones, Jr., Acting Atty. Gen., Dept. of Justice, Harry Baum, Timothy B. Dyk, Attys., Dept. of Justice, Washington, D. C., for appellant.

Harry C. Weeks, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellee.

Before BROWN and WISDOM, Circuit Judges, and ESTES, District Judge.

WISDOM, Circuit Judge.

We face a narrow issue: was the taxpayer, the Forth Worth Club, during its fiscal year ending April 30, 1960, "organized and operated exclusively for pleasure, recreation and other non-profitable purposes", within the meaning of section 501(c) (7) of the Internal Revenue Code of 1954? A strict reading of the statute requires us to hold that the club was not so organized and operated; through a wholly owned subsidiary, the club was in the business of leasing office space to the general public.

The taxpayer is a downtown men's club in Fort Worth, Texas. By rulings dated November 1, 1934 and November 22, 1937, the Commissioner of Internal Revenue exempted the taxpayer, as a social club, from federal income taxes under section 103(9) of the Revenue Act of 1932 and under section 101(9) of the Revenue Act of 1934. These sections are the predecessors of section 501(c) (7) of the Internal Revenue Code of 1954. August 21, 1959, the Commissioner revoked his earlier rulings prospectively, and ruled that the club was not exempt under section 501(c) (7). In

obedience to this ruling the Fort Worth Club filed a return for its fiscal year ending April 30, 1960, and paid corporate income tax of $1,062.58, plus interest. December 28, 1960, it filed a claim for refund of the tax and interest paid. When the Commissioner disallowed the claim, the club brought suit for refund in the United States District Court for the Northern District of Texas. The court held that the taxpayer was entitled to exemption under section 501(c) (7) for the year in question, and ordered full recovery of the tax paid, with interest. Fort Worth Club of Fort Worth, Texas v. United States, N.D.Tex.1963, 218 F. Supp. 431. We reverse.

## I.

The Fort Worth Club, through its wholly-owned subsidiary Club Building Title Holding Company ("Title Holding"), owns a thirteen-story building in downtown Forth Worth. The club uses the top seven floors and a part of the basement for club purposes and rents the bottom half of the building to commercial tenants. In 1955 the club organized Title Holding "for the exclusive purpose of owning [the club's building], collecting the rents therefrom and turning over the entire amount thereof, less expenses", to the club.[1] The deed to Title Holding reserves to the club in perpetuity the right to occupy the basement, the seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth floors, and the roof of the building. At the present time, the club occupies as its quarters and business offices all of the tenth, eleventh, twelfth and thirteenth floors, and parts of the basement and of the sixth, seventh, eighth, and ninth floors. The rest of the building is either under lease or being offered for lease to commercial tenants.

By its charter, Title Holding is required to make monthly payments to the club of all of its income less expenses. For the fiscal years ended April 30, 1956, through April 30, 1961, Title Holding paid the following amounts to the Fort Worth Club:

| Fiscal Year | Amount Paid Fort Worth Club |
|---|---|
| April 30, 1956 | $ 46,229.07 |
| April 30, 1957 | $ 95,000.00 |
| April 30, 1958 | $ 50,000.00 |
| April 30, 1959 | $ 81,489.61 |
| April 30, 1960 | $150,000.00 |
| April 30, 1961 | $ 55,000.00 |

The club deposited these amounts in its general bank account and drew on this account to pay general expenses and to reduce a debt of some $1,850,000 incurred to finance a renovation of most of the building, begun in 1958 and finished in 1960.

The Fort Worth Club has no capital stock; it has never made any distributions of assets or earnings to its members. The members who serve as governors of the club and as officers and directors of Title Holding are not paid for their services.

## II.

Section 501 exempts from income taxation certain organizations described in section 501(c) and (d). The category described in section 501(c) (7) consists of:

"Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder."

The regulations make clear the standard that a club must meet to satisfy the nonprofitable-purposes requirement con-

---

1. In order to borrow $800,000 for the construction of the building in 1924, the club organized a wholly-owned subsidiary, Fort Worth Club Building Corporation, to which it conveyed title to the property on which the building was to be constructed. The club also borrowed $600,-000 from its members. In 1955 all construction loans repaid, the club dissolved Fort Worth Club Building Corporation and took title to the property itself. The club then organized and conveyed the property to Title Holding.

tained in the first clause of section 501 (c) (7):

"(a) * * * In general, this exemption extends to social and recreation clubs which are supported *solely by membership fees, dues, and assessments.* However, a club will not be disqualified because it raises revenue from members through the use of club facilities or in connection with club activities.

"(b) A club which engages in business, such as making its social and recreational facilities available to the general public or by selling real estate, timber, or other products, is not organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, and is not exempt under Section 501 (a). * * * However, an incidental sale of property will not deprive a club of its exemption." Treas.Regs. 501(c) (7)–1.

█ We are not talking about card fees from the gin game—in character or amount. The "Audited Consolidated Financial Statements" of the "Fort Worth Club and Subsidiary" reflect that during the fiscal year ended April 30, 1960, the gross income of the Fort Worth Club, from dues and all other sources, was $258,267. The gross income of Title Holding, consisting solely of rents, was $293,935. The taxpayer can extract no comfort from the fact that the rental income was paid to Title Holding. Even before looking behind the corporate structure, we note that during the year in question Title Holding transferred to the Club $150,000. By no stretch of the imagination, therefore, can it be said, *within the meaning of the regulation,* that the Fort Worth Club was "supported solely by membership fees, dues, and assessments".

### III.

To sustain the judgment of the district court, the Fort Worth Club must show that the pertinent regulation, as it applies here, is invalid under the statute. The barrier against a taxpayer's assault on an I.R.S. regulation is always formidable; here it is insurmountable. The club's argument boils down to the contention that it is exempt under the statute because its business profits are *used* "exclusively for pleasure, recreation and other nonprofitable purposes". The Government answers that the "destination test" is not conclusive under section 501(c) (7). Although the taxpayer is able to find some decisional support for its contention, we find that legislative history and the better reasoned decisions support the Government's position.

█ We begin with the general proposition that tax exemptions, except those of charitable organizations, are to be construed strictly.[2] Here the legislative history urges a particularly strict construction for the exemption of social clubs. The Corporation Excise Tax Act of 1909,[3] imposing the first modern corporate income tax, exempted from tax religious, charitable, and educational organizations "no part of the profit of which inures to the benefit of any private stockholder or individual". The Senate debate over this exemption provision reveals plainly the legislators' awareness that certain organizations they were exempting carried on highly profitable outside business activities. 44 Cong. Record 4149–4157 (1909). It was the uses to which their profits were put that earned exemption for charitable corporations. Trinidad v. Sagrada Orden, 1924, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458.

The 1909 act did not exempt social clubs. The Revenue Act of 1916,[4] however, provided exemptions for several types of organizations previously nonexempt, including social clubs; certain local mutual insurance companies, "the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting its

---

2. See 6 Mertens, Law of Federal Income Taxation (Rev.) § 34.02, and the cases cited therein.

3. 36 Stat. 11, 112–118, Secs. 38–42.

4. 39 Stat. 756, Sec. 11.

expenses"; and agricultural marketing cooperatives. The report of the House Ways and Means Committee states the purpose of the new exemptions:

> "The section specifying the corporations exempt from tax has been reparagraphed and extended. It was deemed advisable to specifically extend the exemption to other corporations similar to those enumerated in the present law as exempt from tax *in view of the fact that the experience of the Treasury Department has been that the securing of returns from them has been a source of expense and annoyance and has resulted in the collection of either no tax or an amount which is practically negligible.*" H.R.Rep. No. 922, 64th Cong., 1st Sess., p. 4 (1916). (Emphasis added.)

■ Thus the social club exemption contained in the present section 501(c)(7), unlike the charitable exemption, was fostered not by any congressional affinity for social clubs, not by any legislative policy favoring the use of funds for social club purposes, but by the demands of administrative convenience. The history justifies the view that the source of a club's revenues, as well as their destination, is crucial in determining the purposes for which the club is "organized and operated". Exemption of a club that derives over half its receipts, in amounts of hundreds of thousands of dollars, from a profitable outside business was surely not within the legislative purpose of the statute.

The history of section 511 of the 1954 Code further supports the Government's position. The provisions of section 511, first enacted in 1950, impose corporate income tax on the "unrelated business income (as defined in section 512)" of certain organizations, including, among others, charitable corporations exempt under section 501(c)(3). The committee reports on sections 511 (section 421 (a) and (b)(1) of the 1939 Code) and 512 (section 422 of the 1939 Code) reveal that social clubs were deliberately excluded from the operation of those sections.[5] The only reasonable inference we can draw is that social clubs with unrelated business income were considered already taxable—that is, not exempt under section 501. Any other interpretation would attribute to Congress the bizarre notion of taxing the unrelated business income of charities, regardless of the philanthropic ends for which such income is used, while allowing social clubs to reap unlimited outside profits without being taxed, so long as the money is spent for club purposes.

■ The taxpayer argues that sections 511 and 512 are not relevant to this case, pointing to section 512(b)(3), which excludes from unrelated business income "all rents from real property". Again legislative history comes to the aid of the Government. The report of the House Ways and Means Committee discloses the purpose of the rental income exclusion:

> "Your committee believes that such 'passive' income should not be taxed where it is used for exempt purposes because investments producing incomes of these types have long been recognized as proper for educational and charitable institutions." H.R.Rep. 2319, 81st Cong., 2d Sess., p. 38 (1950).

But there is no indication in the history of either section 501 or section 511 that Congress was concerned with the propriety or impropriety of real estate investments, or any other type of investment, "passive" or "active", *for social clubs*. Their exemption stands on a different footing from that of charitable and educational institutions. There is no basis in the statute or its history for treating unrelated rental income of social clubs differently from any other unrelated club income.

## IV.

The club finds some support for its position in certain language of this Court

---

5. H.R.Rep. No. 2319, 81st Cong., 2d Sess., p. 36 (1950); S.Rep. No. 2375, 81st Cong., 2d Sess., p. 27 (1950).

in two cases: Koon Kreek Klub v. Thomas, 5 Cir. 1939, 108 F.2d 616; Scofield v. Corpus Christi Golf & Country Club, 5 Cir. 1942, 127 F.2d 452.[6] Koon Kreek was an easy case that made bad dictum. Limited to its facts, Koon Kreek merely allowed an exemption to a fishing and hunting club receiving $500 a year for letting a neighbor graze his cattle on club property, and $4 an acre for an unproductive oil lease that was not renewed. Corpus Christi Golf & Country Club, on the other hand, derived substantial royalties from an oil lease on club property; nevertheless, exemption was allowed. On their facts, both cases are distinguishable. Koon Kreek involved a non-recurring royalty payment and the receipt of insignificant income from a use of club property wholly consistent with club activity. The club did not engage in those activities as a business. In Corpus Christi the Court determined that the royalties the club received were "merely an incident to the ownership of the land", and that the club was neither "actively engaged in operating non club activities", nor did it derive income "from the public generally". 127 F.2d at 454.

■ Closer in point, and more consistent with the legislative history of the statute, are cases holding that, for a social club to qualify for exemption under section 501(c) (7), its outside profits must be (1) strictly incidental to club activities, not a result of an outside business, and (2) either negligible or non-recurring.[7] Under the taxpayer's construction of section 501(c) (7), it would be "a simple matter to tack a profitable business on to a club that was having difficulty in carrying as large and luxurious a plant as the members might like without the payment of burdensome dues". Augustus Hand, J., in West Side Tennis Club v. Commissioner, 1940, 2 Cir., 111 F.2d 6, 8. The Fort Worth Club cannot deny that it has derived substantial and recurrent profit from a business altogether unrelated to its activities as a social club.

We are aware that exemption is a broad brush; the club that loses its exemption becomes taxable on income from all sources, including dues, assessments, and membership fees. We are also aware that denial of exemption renders the non-exempt club taxable on only its net income, and leaves open the possibility of lowering net income by lowering dues. The exemption device may not be the most suitable for the taxation of social clubs, either from the point of view of the Government or from that of the taxpayer. But it is the only device that Congress has provided.

The club that would be exempt must bring itself squarely within the statutory requirement. Here the rental income was not incident to the operation of the club: it was not income derived from the social activities of the club members or the services a club usually provides its members and their guests. "In the present case", as in West Side Tennis Club, "a substantial and profitable business was conducted * * * which had only

---

6. The legislative history of section 501(c) (7) was not called to the attention of the court in these two cases.

7. Aviation Club of Utah v. Commissioner, 10 Cir.1947, 162 F.2d 984, cert. den'd 332 U.S. 837, 68 S.Ct. 220, 92 L.Ed. 409; West Side Tennis Club v. Commissioner, 2 Cir.1940, 111 F.2d 6, 130 A.L.R. 103, cert. den'd 311 U.S. 674, 61 S.Ct. 40, 85 L. Ed. 434; Jockey Club v. Helvering, 2 Cir.1935, 76 F.2d 597; Spokane Commercial Travelers v. Squire, D.C.Wash. 1954, 126 F.Supp. 424; Polish Army Veterans Post 147 v. Commissioner, 1955, 24 T.C. 891, remanded on other grounds,

236 F.2d 509; Juniper Hunting Club v. Commissioner, 1933, 28 B.T.A. 525.

An exemption will not be allowed "in situations involving substantial and profitable 'outside business' since organizations of this general character serve but a limited general purpose. The cases denying exemption stress the fact that the net earnings from profit making activities inured to the benefit of the members in the form of lower dues or larger activities of the club". 6 Mertens, Law of Federal Income Taxation § 34.02, p. 105.

an indirect relation to the recreational objects of the club." 111 F.2d at 8.

The judgment of the district court is reversed, and the case is remanded for action consistent with this opinion.

ESTES, District Judge (dissenting).

I agree with the opinion of the able trial judge that the applicable sections of the Internal Revenue Code and the decisions of this Court, Koon Kreek Klub v. Thomas, supra, and Scofield v. Corpus Christi Golf and Country Club, supra, require a holding in taxpayer's favor.

I do not agree that the meaning of precisely worded § 501(c) (7), making social clubs "exempt" under § 501(a), is affected or changed because legislative history might show that the addition of social clubs to the list of exempt organizations "was fostered * * * by the demands of administrative convenience"; nor do I agree that the specific statement in § 502 [1] that " 'trade or business' shall not include the rental" and the specific statement in § 512(b) (3) that "all rents" are excluded in determining unrelated business taxable income is affected or changed because legislative history gives "no indication * * * that Congress was concerned with the propriety or impropriety of real estate investments * * * *for social clubs."* On the contrary, this history illumines Congressional intent to exempt social clubs, regardless of the reason for doing so.

The majority distinction between this case and the Koon Kreek and Corpus Christi cases is actually in dollars involved and not in essence. The amount of rental income or the proportionate relationship it bears to a social club's other income should not nullify the specific exclusion accorded rental income under § 502 and § 512(b) (3). The circumstance that the Fort Worth Club made a fortuitous investment in the club building

does not justify taking away its exemption.

The Fort Worth Club did not "tack a profitable business on to the club" as in West Side Tennis Club v. Commissioner, supra. It simply rented part of the club building. None of the Circuit Court cases cited held such rents taxable.

While we may think that social clubs should be taxed for rental income, only Congress has the "power to lay and collect taxes on incomes." If Congress intended, or wants, to deny this long-recognized statutory exemption, it may do so. Neither the Treasury Department nor the courts have this legislative power.

I, therefore, respectfully dissent.

---

[1] Denying exemption to a § 501(c) (2) organization (corporations organized for the exclusive purpose of holding title to property, collecting income therefrom and turning over the entire amount thereof, less expenses, to an exempt organization) operated for the primary purpose of carrying on a trade or business.