**The SKILLMAN FAMILY REUNION FUND, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3:00 CV 7500.**

United States District Court, N.D. Ohio, Western Division.

March 29, 2002.

Henry N. Heuerman, Eastman & Smith, Toledo, for The Skillman Family Reunion Fund, Inc. (pla).

Christine Grant Michaelis, United States Department of Justice, Tax Division, Washington, DC, for United States of America (dft).

Gerald P. Moran, Eastman & Smith LTD., Toledo, for The Skillman Family Reunion Fund, Inc. (pla).

Holly T. Sydlow, Office of the United States Attorney, Northern District of Ohio, Toledo, for United States of America (dft).

### MEMORANDUM OPINION

KATZ, District Judge.

Pending before this Court are cross-motions for summary judgment in the above-captioned matter. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. Based upon careful consideration of the parties' motions, oppositions and replies, and the entire record herein, the Court will grant in part and deny in part Defendant's motion. The Court will deny Plaintiff's motion in its entirety.

## I. BACKGROUND

Plaintiff, the Skillman Family Reunion Fund, Inc. ("Fund"), filed its Complaint in this Court on August 16, 2000, seeking recovery of internal revenue taxes allegedly erroneously assessed against it for the tax years 1992, 1993, and 1994—$971.53, $3,533.49, and $6,255.36, respectively—plus interest paid and accrued. Established by the children of Thomas and Shirley Skillman, the Fund's stated purpose is "to bring the members of the Skillman Family into closer association through social activities ... [,] collect and preserve family records ..., organize and conduct social activities ... and distribute ... communications of family interest." Stip. Facts at 2. The Fund is administered by four trustees, namely the four children of Thomas and Shirley Skillman, who each have contributed $38,906.75 to the Fund. No other contributions, fees, or dues have been paid by the Fund's members. In the years for which Plaintiff seeks a refund, "100% of the ... Fund's gross receipts came from its investment activities, including the sale and purchase of securities, interest and dividend income, and ordinary income from an investment in a partnership." Stip. Facts ¶ 12 at 4–5. The Fund reinvests any income not spent on tax-exempt activities and pays unrelated business income tax ("UBIT") on the profits on its investments.[1] Although the Internal Revenue Service ("IRS") had previously determined in 1989 that the Fund qualified as a tax exempt organization,[2] the IRS later revoked the Fund's tax-exempt

1. Section 501(c) tax-exempt organizations generally are taxed at regular corporate rates on unrelated business income, defined as "the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b)." 26 U.S.C. § 512(a). Generally, investment income is excluded from the unrelated business income tax ("UBIT"). 26 U.S.C. § 512(b)(1). However, for § 501(c)(7) tax-exempt social clubs, investment income is subject to UBIT, unless the investment income is "exempt function income," an argument not made by Plaintiff in the instant action. 26 U.S.C. § 512(a)(3)(A).

2. Among the types of organizations enumerated by the Internal Revenue Code ("IRC" or "Code") as tax exempt are "[c]lubs organized for pleasure, recreation, and other nonprofita-

status in 1993 based upon the Fund's investment income. The IRS instructed Plaintiff to file Form 1120 for the tax years beginning after December 16, 1991 and also determined that the Fund was liable for personal holding company tax pursuant to 26 U.S.C. § 542 for the years 1992, 1993, and 1994.

Instead of filing Form 1120, Plaintiff instead filed Forms 990 (Return of Organization Exempt From Income Tax) and 990–T (Exempt Organization Business Income Tax Return), due to the disputed revocation of its tax exempt status. On November 3, 1997, the IRS determined that the Fund owed corporate income tax and personal holding company tax for years 1992, 1993, and 1994. The IRS also made assessments against Plaintiff for failure to file, failure to pay income taxes due, and for interest. On May 20, 1998, Plaintiff paid in full the amount of the assessed deficiency, including all penalties and interest. Plaintiff subsequently filed a Claim for Refund, which was disallowed on March 17, 1999, resulting in the filing of the instant action.

Defendant has moved for summary judgment on the grounds that: "(1) the Reunion fund receives 100% of its income from investment income, and (2) the Reunion Fund's net earnings inure to the benefit of its members." Def.'s Mot. Summ. J. at 1. Plaintiff opposes Defendant's motion and has moved for summary judgment on the grounds that "the Reunion Fund is a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(7)." Pl.'s Mot. Summ. J. at 2.

## II. DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

___

ble purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder." 26 U.S.C. § 501(c)(7).

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

### B. The Dispositive Issues

The instant motions are disposed of by resolution of a single issue: is the Fund a tax-exempt organization pursuant to 26 U.S.C. § 507(c)(7). The answer to the question lies in the impact of the investment income generated by the Fund. As discussed more fully below, the Court determines that the Fund cannot be regarded as a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(7), and that Defendant is not bound by its 1989 determination that Plaintiff qualified as a § 501(c)(7) tax-exempt social club. However, based upon the record, the Court cannot determine at this time as a matter of law whether Plaintiff is subject to a personal holding company tax. Accordingly, the Court will grant in part and deny in part Defendant's motion and deny Plaintiff's motion in its entirety.

### 1. Plaintiff's Investment Income Disqualifies It From Tax–Exempt Status

Section 501(c)(7) contains certain requirements that a social club must meet in order to obtain, and obviously retain, tax exempt status. The club must be "organized for pleasure, recreation, and other nonprofitable purposes." 26 U.S.C. § 501(c)(7). "Substantially all" of the activities must be conducted for the aforementioned purposes. *Id.* And no part of the net earnings may "inure to the benefit of any private shareholder." *Id.* "The burden is on the taxpayer seeking exemption to demonstrate that it is in fact entitled to tax-exempt status." *Fund for the Study of Econ. Growth & Tax Reform v. IRS*, 161 F.3d 755, 759 (D.C.Cir.1998); *Phi Delta Theta Fraternity v. Comm'r of Internal Revenue*, 90 T.C. 1033, 1037, 1988 WL 46815 (1988) (taxpayer has the burden of establishing that assessment is incorrect).

The determinative question in this case is whether Plaintiff is disqualified from tax-exempt status because it is funded one-hundred percent from investment income. Plaintiff asserts that it "has been and is exclusively engaged in recreational and social purposes as described by § 501(c)(7) and as such, qualifies for an exemption as an organization which is exclusively engaged in social and recreational activities." Compl. ¶ 15 at 4. In support of its contention, Plaintiff notes that less than one percent of the Fund's activities relate to the production of investment income, and that there is "no nonmember income generated by providing services for use of facilities by persons other than members of the Reunion Fund." Compl. ¶ 16 at 4. Plaintiff contends that it should maintain its tax-exempt status, regardless of the amount of investment income, so long as the Fund's members spend time pursuing the stated purposes of the Fund, which fall within the parameters of the § 501(c)(7) definition of a tax-exempt social club.

Defendant concedes that the Fund was organized for statutorily permissible non-profit purposes. Def.'s Resp. at 2. However, Defendant claims that the source of the Fund's income, *i.e.*, from investments, as well as the percentage that this income comprises of Plaintiff's gross receipts, *i.e.*, one-hundred percent, disqualifies Plaintiff from tax-exempt status. Defendant equates Plaintiff's investment income with engaging in for-profit activities that violate the § 501(c)(7) requirement that substantially all activities must be conducted for an acceptable nonprofit purpose. In support of its position, Defendant maintains that "[a] social club must receive substantially all of its income from tax-exempt sources such as dues and fees, must not receive more than 35% from outside in-

come sources, including investment, and none of the social club's net earnings may inure to the benefit of the members." Def.'s Resp. at 5 (citing among other authorities 26 U.S.C. § 501(c)(7)); S. REP. No. 94–1318 (1976), *reprinted in* 1976–2 C.B. 597, 598–99, and n. 1;[3] Rev. Rul. 66–149, 1966–1 C.B. 146.

Plaintiff construes Defendant's assertion as proposing that thirty-five percent is an arbitrary cut-off. Plaintiff argues that "[t]he Commissioner seeks to read into the legislative history, and thus the statute, a ceiling on the percentage of net investment income that a tax-exempt social club can receive." Pl.'s Mem. P. & A. at 10. Plaintiff instead submits that thirty-five percent is merely a safe harbor, and if non-member and investment income is below that threshold, that no inquiry will be made into the activities of the club. Plaintiff submits that "[t]he statutory language and the clear implication from the legislative report are that a social club can qualify for tax exempt status, regardless of the percentage of its investment income, if *substantially all* of the activities of the social club are in furtherance of its tax-exempt purpose." Pl.'s Reply at 9. Plaintiff reasons that since "the record reveals that over 99% of the activities of the Reunion fund are directed to the realization of its exempt purposes," that the Fund still qualifies as tax-exempt. *Id.* Plaintiff asserts

that it is primarily engaged in its stated purpose because the trustee responsible for making investment decisions spends only a few hours per year consulting with an investment advisor, and thus the Fund is not engaged in a business that disqualifies it from tax-exempt status.

■ In the instant action, even if the ratio of time spent on investments is small in comparison to the time spent pursuing family activities, Plaintiff cannot escape the fact that courts, based upon guidance from the legislative history of § 501(c)(7), regard the *percentage* of investment income, in relation to an organization's *total gross receipts*, as an indicator of whether the organization is conducting "substantially all" of its activities for statutorily permissible non-profit purposes. *See U.S. v. Fort Worth Club of Fort Worth,* 345 F.2d 52, 56 (5th Cir.1965) ("the source of a club's revenues, as well as their destination, is crucial in determining the purposes for which the club is 'organized and operated' "). Plaintiff argues that this position "is entirely distorted and disconnected from the issue of qualifying for exemption" and "focuses only on the percentage of investment income, not the activities." Pl.'s mem. P. & A. at 16. Yet it is clear from the legislative history that the percentage of income is the primary focus of the inquiry. The history provides that:

---

**3.** The parties dispute both the interpretation and the weight to be given the legislative report accompanying the 1976 amendments to § 501(c)(7). While Plaintiff asserts that the report does not specify thirty-five percent as an established cut-off, the report saliently explains that the amendment "allows the organization to earn income from nonmember sources *to a limited extent* and to have a *limited* amount of investment income ... without losing its general exemption from income tax." S. REP. No. 94–1318 (1976) (emphasis added). The report further notes that the amendment would "permit *somewhat larger amounts* of income to be derived by

exempt social clubs ... from investment income sources." *Id.* (emphasis added). This amount should be larger than the $2,500 or alternatively "not more than five-percent" of the benchmark previously established. The Court reads this language as restrictive and to indicate that there must be at least *some* limit on the amount of permissible investment income. *See, e.g., U.S. v. Fort Worth Club of Fort Worth,* 345 F.2d 52, 55 (5th Cir.1965) (noting that "tax exemptions, except those of charitable organizations, are to be construed strictly") (citing 6 MERTENS, LAW OF FEDERAL INCOME TAXATION (Rev.) 34.02).

For the purposes of the 35–percent test, ... exempt function income should be included in both the numerator and the denominator, and if this exempt function income causes the organization to exceed the 35–percent limit, the organization is to lose its exempt status (unless the facts and circumstances of the case warrant otherwise).

S. Rep. No. 94–1318. While this provision directly addresses the treatment of "exempt function" income, which is not at issue here, the Court nonetheless finds the passage instructive. For if Congress has determined that any amount over thirty-five percent of income generated from a protected "exempt function" should disqualify a club from tax exempt status, then certainly an amount over that threshold generated by a non-protected, non-exempt function source should disqualify a club from tax-exempt status. While the above-quoted passage is qualified by the "facts and circumstances" provision, the legislative history gives no indication of what precisely constitutes a fact or circumstance allowing an organization generating outside income in excess of thirty-five percent to retain its tax-exempt status. Moreover, the drafting of the passage seems to presume that if the outside income exceeds thirty-five percent, the organization is not entitled to an exemption unless the facts and circumstances indicate that an organization is otherwise so entitled. Plaintiff also takes issue with a distinction made by Defendant between the activities of the Fund's members and the activities of the Fund itself. Defendant asserts that although a small amount of time might be spent by an individual member coordinating the investments of the Fund, the overall operation of the Fund itself cannot be regarded as substantially in pursuit of permissible non-profit activities by virtue of the percentage of income generated by the Fund from investments. While ostensibly a circuitous argument, the Court nonetheless agrees that the Fund cannot fairly be said to conduct "substantially all" of its activities for statutorily permissible non-profitable purposes. First, Plaintiff provides no authority establishing that the Court should not draw a distinction between the activities of a club's members and the overall characterization of the club's activities. Second, Plaintiff inadvertently makes Defendant's case by conceding that "the small amount of time spent by Dean Skillman in investment-related activities does not change the nature of the operations of the Reunion Fund." Pl.'s Mem. P. & A. at 23. The Court agrees that the characterization of the Fund's operations is not to be hinged on the amount of time spent by the trustees in coordinating investments. Moreover, if the primary evaluatory criterion were to lie in an examination of the activities of an organization's members, then an organization would be free to conduct whatever side ventures it desired, at whatever income levels of profit, so long as the individual members were pursuing the stated purposes of the club. This certainly cannot be a loophole envisioned by the statute's drafters, and it is not an interpretation supported by either the legislative history or case law. As noted by Defendants, Congress still appears to be keenly interested in the source of a club's income and the percentage of that income relative to the club's gross receipts.

While the Court does not make a determination as to the precise percentage of investment income that exceeds the permissible limit, the "facts and circumstances" of this case lead the Court to agree with Defendant that one-hundred percent certainly is beyond any permissible limit. Plaintiff has received a recurring amount of investment income, totaling one-hundred percent of its gross receipts, even in years in which no family reunion was held. The Court finds support for this

position in case law, revenue rulings, and the legislative history of the amendment to § 501(c)(7).

As the Court has made this determination, it need not address the parties' other arguments pertaining to whether any benefits inure to the Fund's members or tax neutrality.[4] However, having made this determination, the Court still is left to address Plaintiff's assertion that Defendant is bound by its 1989 determination that Plaintiff qualified as a § 501(c)(7) tax-exempt social club.

### 2. Defendant is Not Bound by Its Prior Determination

Plaintiff asserts that Defendant is bound by its 1989 determination that the Fund qualified as a § 501(c)(7) tax-exempt social club. Plaintiff argues that its investment activities were fully disclosed when it applied for and was approved for tax-exempt status, and that the subsequent revocation cannot stand because the determination was not made to correct a matter of law, but rather merely reinterpreted the same facts. In support of this position, Plaintiff submits that "[t]he Sixth Circuit has expressed the view that the Commissioner is bound by prior rulings where there are no

new facts, but only different inferences drawn from the same facts." Pl.'s Mem. P. & A. at 26 (citing *H.S.D. v. Kavanagh*, 191 F.2d 831 (6th Cir.1951); *Woodworth v. Kales*, 26 F.2d 178 (6th Cir.1928)). Ultimately, Plaintiff's reliance upon these cases is misplaced. The determination in *H.S.D.* was based upon the facts of that case, and not on a general principle that the IRS is bound by prior rulings. In *Woodworth*, unlike in the instant action, no mistake of law was alleged by the government.

Plaintiff's entire argument is premised upon its contention that the Commissioner is entitled to correct an erroneous interpretation of law, but that the instant action gives rise only to different inferences drawn from the same facts. Plaintiff maintains that there are no new facts, law, or revenue rulings upon which to base Defendant's revised determination. Plaintiff's assertion that this matter is one of fact is disingenuous given its statement in the reply brief that the issue before the Court is a legal issue and not factual.[5] As the Court is resolving the same issue on the same facts relevant to the 1989 revocation, the Court is left to query why the 1989 revocation determination should be

---

**4.** Plaintiff complains that "[i]f the reunion fund is denied tax exempt status, Congress' goal of tax neutrality will not be achieved" because the Fund will pay tax not only on investment income, but also on membership dues, the members will pay dues with after-tax dollars, and then the Reunion Fund will pay tax on those same after-tax dollars. Pl.'s Reply at 18. Without engaging in a lengthy discussion of the philosophical underpinnings of the tax code, the Court first notes that the Fund's members currently pay no dues. The Fund instead generates one-hundred percent of its income from investments, which is precisely why it faces its current predicament. Second, the "double taxation principle" complained of by Plaintiff is recurrent throughout the tax code and was a result clearly endorsed by the drafters of the amendment. *See* S. Rep. No. 94–1318. (explaining that "[i]f it is deter-

mined that the organization is to lose its exempt status for that year, all of its income, even that received from its membership, is to be subject to tax in that year. In such a case, the income received from the club's members . . . could be offset by the cost of services and goods furnished the members."); *see also Fort Worth*, 345 F.2d at 57 (acknowledging that "exemption is a broad brush; the club that loses its exemption becomes taxable on income from all sources, including dues, assessments, and membership fees").

**5.** As conceded by Plaintiff, "[t]he sole legal question to be decided by this court . . . is whether the Reunion Fund should be denied tax exempt status . . . solely because all of its gross receipts came from investment income." Pl.'s reply at 3–4.

presumed factual, as opposed to the Court's determination, which Plaintiff asserts is a legal issue.

Plaintiff further argues that there is no showing or claim that the Commissioner made a mistake of law. This is correct insofar as the revocation letter does not fully explicate the basis upon which the revocation determination was made. *See* Dean Skillman Aff. Ex. E. However, Defendant clearly asserts in its memoranda that the revocation corrected an erroneous exposition of the law and reconciled certain inconsistencies contained in the original determination letter.[6]

■ There is one primary, undisputed fact relevant to the instant action—the fact the Plaintiff received one-hundred percent of its income from outside investment sources. All that remains is to apply the relevant law to the pertinent facts. What really is at dispute in the instant action is the interpretation to be given to the "substantially all" provision in the statute and the meaning of the thirty-five percent benchmark provided in the legislative history. This is a question of law, *e.g., Auto. Club of Mich. v. Comm'r of Internal Revenue*, 230 F.2d 585, 589 (6th Cir.1956) (explaining that the determination of "whether the organization and operation were . . . for pleasure, recreation, and other nonprofitable purposes" is a statutory question), *aff'd*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957), and subject to correction by the IRS, as conceded by Plaintiff. *See Auto. Club*, 230 F.2d at 589 (noting that "[t]he Commissioner is not bound by his own or his predecessor's prior mistakes of law");

*Woodworth*, 26 F.2d at 181 (noting that the Commissioner's "mistake of law will often, or usually, justify a revision of his conclusion").

The Court does not hold that the IRS is never to be bound by a prior ruling. That is a determination to be made on a case by case inquiry. However, in the instant action, Plaintiff has not demonstrated why the Court should disturb the revocation determination.

### 3. *Personal Holding Company Tax*

As a final matter, the Court addresses Defendant's assertion that the Fund is subject to a personal holding company tax pursuant to 26 U.S.C. § 542. Defendant makes this assertion, but does not adequately demonstrate to the Court that all the prerequisites of § 542 have been met. The Court makes clear that it is not determining whether Plaintiff is or is not subject to this tax, but merely determines that Defendant has failed to meet its burden for summary judgment. On the record before the Court this determination cannot be made as a matter of law.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion as to the revocation of Plaintiff's § 501(c)(7) tax-exempt status and as to the non-binding effect of the 1989 determination letter. However, the Court will deny Defendant's motion as to Plaintiff's status as a personal holding company. The Court will deny Plaintiff's motion in its entirety. There-

---

**6.** The original determination letter granted tax-exempt status to Plaintiff, "[b]ased upon information supplied, and assuming your operations will be as stated in your application for recognition of exemption." Dean Skillman Aff. Ex. D at 1. However, the letter further stated that:

A section 501(c)(7) organization is permitted to receive up to 35 percent of it gross receipts, including investment income, from sources outside of its membership without losing its tax-exempt status.... Income in excess of these limits may jeopardize your continued tax-exempt status.

*Id.* at 2.

fore, the sole remaining issue in the instant action is whether Plaintiff was properly classified and taxed as a personal holding company pursuant to 26 U.S.C. § 542, *et seq.* The defendant is granted to March 25, 2002 to file a dispositive motion on that issue.

IT IS SO ORDERED.